520

Argued and submitted June 12, affirmed August 22, 2007

In the Matter of the Marriage of

Susan E. HARP,
aka Sheri E. Harp,
aka Susan Sheri Harp,
*Petitioner-Respondent,*

*and*

Bill Leroy HARP,
*Respondent-Appellant.*

Linn County Circuit Court
980767; A131486

167 P3d 457

Russell Lipetzky argued the cause and filed the brief for appellant.

Patrick L. Hadlock argued the cause for respondent. With him on the brief were Larry W. Stuber and Ringo, Stuber, Ensor & Hadlock, P.C.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Husband appeals a supplemental judgment modifying his spousal support obligation by reducing it from $1,700 per month to $1,100 per month. Husband argues that the trial court erred in not further reducing the amount of his monthly support obligation. On *de novo* review, ORS 19.415(3), we affirm.

The facts are not in dispute. The parties' 20-year marriage ended in 1999. At the time of the dissolution, husband was 55 years old and had been working in the electronics industry, earning a gross monthly income of $4,700. Wife was 52 years old at that time and had not been working because of a debilitating illness. The dissolution court evenly split husband's retirement and investment accounts and ordered husband to pay $1,700 per month indefinite spousal support. In setting the amount of support, the court identified as relevant factors husband's earning capacity, the length of the marriage, and the fact that wife's "present physical condition renders her not employable and not capable of currently earning income."

Since the entry of the 1999 dissolution judgment, wife's health has not improved. She has been hospitalized on eight occasions, during three of which she required life support. Because she did not have health insurance, she was forced to liquidate all of her assets, including those awarded in the dissolution judgment. In 2003, she began receiving $534 per month in social security disability payments. In 2004, however, she filed for bankruptcy because of her inability to pay her medical and other bills. Under the terms of the bankruptcy order, wife is required to pay $360 per month toward her outstanding debts.

Since the entry of the 1999 dissolution judgment, husband's circumstances also have changed. In 2002, husband remarried and began combining his income and assets with those of his current wife to pay their bills. Husband's current wife is employed, earning $2,074 per month. Husband and his current wife live in a newly constructed home, which they are purchasing. In 2004, husband was laid off from his job and received $36,048 in severance pay. Since

then, he made some limited efforts to find employment; he applied unsuccessfully for four jobs. In 2005, he decided to retire. He now receives $1,403 per month in social security benefits. His current wife's monthly income is approximately $2,000 per month. In addition, he is permitted to earn approximately $1,000 per month without jeopardizing his social security benefits.

In 2005, husband moved for modification of spousal support, seeking termination of his support obligation. He alleged a substantial and unanticipated change in circumstances that arose from being laid off and his subsequent retirement and from wife's receipt of disability benefits.

The trial court agreed that there had been a substantial and unanticipated change in circumstances, but it concluded that those circumstances warrant only a reduction in husband's support obligation from $1,700 per month to $1,100 per month. The trial court noted that husband is physically able to work but is "making little, if any, effort since his lay-off to find employment." The court also noted that, "[e]ven if his decision to take early retirement was made in good faith, that does not necessarily automatically disqualify him from paying spousal support." The court observed that he is, even in retirement, capable of earning $1,000 per month without a loss of social security benefits. In addition, the court noted that husband has remarried and that he and his current wife have combined their income and assets and use their joint income to pay their bills.

On appeal, husband argues that the trial court erred in failing to further reduce the obligation. Specifically, he argues that the court erred in imputing earning capacity to him when he has retired in good faith. In light of his difficulty in finding employment, he argues, he should not be required to pay spousal support on the basis of income he simply does not have. Wife responds that the trial court correctly found that it was just and equitable to reduce—but not terminate—husband's support obligation, in light of her inability to work, his remarriage, his receipt of retirement benefits, and his earning capacity even in retirement.

A spousal support award may be modified when there has been a substantial and unanticipated change in the

parties' economic circumstances since the time of the earlier award. *Tomos and Tomos*, 165 Or App 82, 87, 995 P2d 576 (2000). In this case, the parties do not dispute that there has been a substantial and unanticipated change of circumstances.

■ In determining whether a modification of a support award is appropriate, the overriding consideration is " 'what is "just and equitable," * * * under the totality of the circumstances.' " *Halsey and Halsey*, 180 Or App 169, 177, 41 P3d 1119 (2002) (quoting *Albrich and Albrich*, 162 Or App 30, 37, 987 P2d 542 (1999)). Thus, in modifying a support award, the court focuses on all of the circumstances that have changed since the dissolution. *Hall and Hall*, 86 Or App 51, 54, 738 P2d 218 (1987).

■ ■ In determining an appropriate spousal support amount, we are not restricted to a consideration of what either party is presently receiving but may consider the parties' earning capacities and potential future income. ORS 107.135(4)(a) (in considering whether a change in circumstances exists sufficient to justify modification of a spousal support award, "the court * * * shall consider income opportunities and benefits of the respective parties from all sources" including "the reasonable opportunity of each party, the obligor and the obligee respectively, to acquire future income and assets"); *Hutchinson and Hutchinson*, 187 Or App 733, 740, 69 P3d 815 (2003); *Pagano and Pagano*, 147 Or App 357, 363, 935 P2d 1246 (1997); *Alls and Alls*, 137 Or App 32, 35, 902 P2d 1204 (1995); *Gable and Gable*, 89 Or App 664, 668, 750 P2d 534 (1988). Although, in imputing potential income, a court may not merely speculate, it may impute potential income based on earning capacity where there is sufficient information to make an informed assessment. *Furlong and Furlong*, 120 Or App 105, 108, 852 P2d 233 (1993); *Newton and Newton*, 122 Or App 52, 56, 857 P2d 171, *rev den*, 318 Or 25 (1993).

With the foregoing principles in mind, we conclude that the trial court's decision was just and equitable, taking into account the totality of the circumstances. Wife's economic circumstances are dire. She is receiving a modest

amount of disability benefits, but her income remains insufficient to cover her medical expenses. Her bankruptcy did not eliminate her debts, and she remains unable to earn any additional income. Meanwhile, husband's economic situation is stable. Although he was laid off, he has made little effort to seek employment. As the trial court correctly observed, even if the decision to take early retirement was made in good faith, that does not automatically relieve husband of his support obligation. He remains able to work and can earn a substantial income—almost enough to cover the support obligation—without jeopardizing his social security benefits. Aside from that, he also has remarried, and he has combined his income and assets with those of his current wife to pay their expenses. Accordingly, it is appropriate to take into account the additional income that his current wife earns. In short, the trial court did not err in reducing, but not terminating, husband's spousal support obligation.

Affirmed.