Argued and submitted April 18, affirmed June 29, 2011

In the Matter of the Marriage of

Barbara Ellen FROST,
nka Barbara Ellen Johnson,
*Petitioner-Appellant,*
*and*

Steven Richard FROST,
*Respondent-Respondent.*

Jackson County Circuit Court
023347D3; A143835

260 P3d 570

Russell Lipetzky argued the cause and filed the briefs for appellant.

Laura Graser argued the cause and filed the brief for respondent.

Before Brewer, Chief Judge, and Carson, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

Wife appeals the trial court's supplemental judgment terminating husband's maintenance spousal support obligation to wife. Wife argues that several findings of fact that the trial court made did not comport with uncontroverted evidence, that those erroneous findings infected the trial court's conclusion that spousal support should be terminated, and that, in any event, the trial court erred in retroactively terminating support to the date wife was served with husband's motion to modify the judgment. Because the notice of appeal in this case was filed after the effective date of the 2009 amendments to ORS 19.415(3), we have discretion whether to review the facts *de novo*.[1] For the reasons explained below, we accede to wife's request that we exercise our discretion to review *de novo*. After finding certain facts anew on the record, we nonetheless conclude that the trial court properly terminated husband's spousal support obligation, and we reject without discussion wife's argument that the court improperly exercised its discretion to terminate the obligation retroactively under ORS 107.135(6). Accordingly, we affirm.[2]

---

[1] ORS 19.415(3) (2007) provided that, in equitable cases, "the Court of Appeals shall try the cause anew upon the record." That provision was amended in 2009, making *de novo* review discretionary in cases where the notice of appeal was filed after June 4, 2009. *See* Or Laws 2009, ch 231, §§ 2, 3. Here, appellant's notice of appeal was filed after the effective date of those amendments. ORS 19.415(3) now provides:

"Upon an appeal in an equitable action or proceeding, review by the Court of Appeals shall be as follows:

"* * * * *

"(b) Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."

[2] We reject without extended discussion husband's argument that this court lacks appellate jurisdiction because wife failed to file a separate notice of appeal from a corrected supplemental judgment entered pursuant to ORCP 71. Unlike the original supplemental judgment, the corrected supplemental judgment quantified the particular amount of support for which the court required wife to reimburse husband upon retroactively terminating husband's support obligation. The original supplemental judgment was identical in all respects except that it did not list a specific amount for reimbursement. Wife has not assigned error to the amount of reimbursement as reflected in the corrected supplemental judgment or to its enforcement; rather, she challenges the factual and legal underpinnings of the trial court's decision to terminate spousal support, and, derivatively, to do so

The parties were married for 20 years before they separated in 2001. In late 2003, they entered into a marital settlement agreement that was incorporated into a judgment of dissolution. The dissolution judgment awarded wife maintenance spousal support in the amount of $3,000 per month for a period of eight years. The parties received several hundred thousand dollars each in an equal property division, with wife receiving much of her share in the form of an equalizing judgment. At the time of dissolution, the parties' two children were older teenagers attending school. Husband was (and remains) a pharmacist who earned $12,000 per month at the time of dissolution. Wife was (and remains) a dental hygienist who, at the time of dissolution, was working part-time at a salary of $3,200 per month. Although the dissolution judgment did not state the purpose of the maintenance support award, the evidence at trial showed that its purpose was to narrow the discrepancy between the parties' incomes.

Wife and her current husband, Johnson, had a relationship predating the dissolution of wife's marriage to husband. Wife and Johnson began living together in September 2003. They signed a cohabitation agreement in October 2004. At that time, Johnson, a retired dentist and real estate investor, had a net worth of more than $4.6 million and an annual income of $332,000. Wife had a net worth of $776,000 and annual income (including spousal support from husband) of

retroactively. Those issues were clearly presented in the supplemental judgment, and they were not changed by entry of the corrected supplemental judgment.

The circumstances here are analogous to those in *Ramis Crew Corrigan v. Stoelk*, 193 Or App 700, 92 P3d 154 (2004), where we held that an amended judgment that set out a specific amount of prejudgment interest to which a post-judgment interest obligation attached did not materially alter the parties' rights and obligations or create a right to appeal, and any errors that a party wanted to raise about the amended judgment could be raised on appeal or cross-appeal from the original judgment. So, too, here, in setting out a particular amount of required reimbursement that was readily calculable from the original supplemental judgment, the corrected supplemental judgment did not materially alter the parties' rights and obligations under the original supplemental judgment. *Cf. Mullinax and Mullinax*, 292 Or 416, 432, 639 P2d 628 (1982) (holding that, where an amended judgment supplants an original judgment, an appeal must be taken from the amended judgment). Accordingly, because the corrected supplemental judgment did not affect a substantial right of a party at issue on appeal, the time for filing a notice of appeal commenced with the entry of the original supplemental judgment, and the corrected judgment was not separately appealable. *See* ORS 19.205(1); ORS 18.107(2).

$76,000. Wife and Johnson built a home together in 2004 that cost $800,000 to construct. They originally took out a $500,000 mortgage to build the home. That home was substantially larger and more expensively furnished than the residence that husband and wife lived in during their marriage.[3] Also in 2004, Johnson paid wife $50,000 in interest on an investment that she had made with him.

The trial court found, and on *de novo* review, we also find, that, at the time of dissolution, husband did not anticipate that wife and Johnson would marry. However, wife and Johnson did marry in March 2007. They executed a prenuptial agreement, which included several provisions that are pertinent here. According to the agreement, Johnson's annual income had increased to $500,000 and wife's remained the same as in 2004. Johnson's assets were worth $7 million, and wife's net worth was more than $1 million. Under the terms of the prenuptial agreement, wife agreed to contribute $2,000 per month to a household account, and Johnson agreed to contribute $4,000 to the same account. Wife and Johnson pay their mortgage, taxes, insurance, and other household expenses from that account. By its terms, the prenuptial agreement required wife and Johnson to equally divide their non-housing-related joint living expenses. However, each was free to make gifts to the other. Also by its terms, the agreement was scheduled to terminate on December 31, 2011. That date was chosen, at least in part, to coincide with the termination of husband's spousal support obligation to wife in October 2011. After that date, the agreement provided that Johnson would pay *all* of his and wife's joint living expenses.

In 2008, husband filed a motion to modify the dissolution judgment to terminate his spousal support obligation. When the case came to trial in October 2009, the primary focus of the proceeding was on whether the financial resources that Johnson contributed to his marriage with wife had supplanted the purposes of the spousal support award in this case. At the time of trial, Johnson's pension income had declined, but there was very little current evidence about his other sources of income. The residence that wife and Johnson

---

[3] The parties had sold that residence in 2002 for $389,000.

co-owned was worth $1.4 million. Husband's employment income was higher than at the time of dissolution and wife's employment income had not materially changed. Wife and Johnson had taken many vacations over the previous five years, including trips to California, New Zealand, Africa, the Caribbean, and elsewhere. Johnson had paid for all their vacation expenses. During their marriage, husband and wife also had traveled, but much more modestly.

After they built their home, wife and Johnson took out a home equity loan so that wife could lend $383,000 to one of husband and wife's sons for business purposes. Wife receives a monthly payment of $5,000 from her son on that loan, and she pays approximately $4,000 per month to the lender on the home equity loan. Wife previously had loaned the same son $110,000 from the proceeds of her share of the property division from the dissolution of her marriage to husband. Her son pays a monthly principal payment, but no interest, on that loan.

On appeal, wife challenges certain findings of fact that the trial court made, its ultimate conclusion that it was just and equitable to terminate spousal support, and the court's determination that support should be retroactively terminated. We begin with wife's challenge to the trial court's findings. In the judgment terminating spousal support, the trial court made four findings of fact that wife challenges on appeal. In a nutshell, the court found that (1) the parties' son pays wife $5,000 per month on his larger loan, and wife pays only $1,500 per month on her corresponding home equity loan; (2) wife could earn approximately $8,000 per month from employment; (3) wife has no health-related employment limitations; and (4) wife shares a Sunriver vacation home with Johnson. In the interest of brevity, it suffices to say that, in our view, those particular findings either do not comport with the evidence in the record or they are not pertinent to our analysis. First, the undisputed evidence showed that, after repayment of the home equity loan, the *net* monthly loan payments from the parties' son are approximately $1,000. As for the second and third challenged findings, we choose not to adopt them. Although the trial court was not obliged to credit wife's largely uncorroborated testimony that health problems prevented her from working full time, that

issue was not a primary consideration in the calculus before the court. Husband did not assert as a ground for termination of support that wife's earning capacity had improved since the parties' dissolution, and that issue is largely collateral to our review. We assume for present purposes that wife's earning capacity had not improved since the dissolution. As to the fourth finding, a trust that Johnson established owned an interest in a Sunriver vacation residence, but that property was sold before the trial in this case. Accordingly, we decline to adopt that finding.

For the foregoing reasons, we exercise our discretion to review *de novo. See* ORAP 5.40(8)(d)(ii) (in determining whether to exercise *de novo* review, the Court of Appeals will consider "[w]hether the trial court's decision comports with its express factual findings or with uncontroverted evidence in the record"). In doing so, we do not consider the second and third challenged findings that the trial court made; as respects the first and fourth challenged findings, we make the alternative findings set out above. In addition, as did the trial court, we find that "wife presently enjoys a lifestyle of substantially higher quality than the lifestyle she enjoyed at the time the parties separated. Wife lives in a substantially nicer house and has access to the resources of Mr. Johnson through expenses that he pays for * * *, travel and day-to-day living." Moreover, as explained below, we agree with the trial court that, as a result of her remarriage, wife has become able to exceed the parties' marital standard of living without the support award.

ORS 107.135(3)(a) provides:

"A substantial change in economic circumstances of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of support, except that an order of compensatory spousal support may only be modified upon a showing of an involuntary, extraordinary and unanticipated change in circumstances that reduces the earning capacity of the paying spouse."

The question is whether, as husband argues, wife's remarriage constituted a "substantial change in economic circumstances" sufficient for the trial court to reconsider the spousal

support award. *See Tomos and Tomos,* 165 Or App 82, 87, 995 P2d 576 (2000) (an award of spousal support may be modified if there has been a substantial, unanticipated change in circumstances since the time of the earlier award). If there has been such a change, then "[t]he overriding consideration in determining the appropriate amount of spousal support is what is 'just and equitable,' * * * under the totality of the circumstances." *Albrich and Albrich,* 162 Or App 30, 37, 987 P2d 542 (1999).

In this case, wife does not challenge the trial court's finding that, at the time of dissolution, husband did not anticipate her marriage to Johnson. Thus, the question is whether that substantial, unanticipated change in circumstances has made it just and equitable to terminate husband's spousal support obligation. Whether changes in the economic circumstances of an obligee spouse justify termination of spousal support depends on whether the changes satisfy the purposes of the support. *Bates and Bates,* 303 Or 40, 46, 733 P2d 1363 (1987). When determining whether to terminate support, the first question is what the purpose of the support was, and the second question is whether the changes satisfy that purpose. *Rubey and Rubey,* 165 Or App 616, 621, 996 P2d 1006 (2000). Remarriage is not, by itself, grounds for termination of spousal support. *Id.* at 620. That is because "[s]ome of the purposes behind spousal support * * * are not altered or ended by remarriage." *Bates,* 303 Or at 44. Thus, in this case, our task is to first determine the purpose of the spousal support award and then to determine whether wife's remarriage and resulting improved economic circumstances satisfy that purpose.

As we have previously noted, although the judgment of dissolution did not elaborate on the particular purpose of the maintenance support award in this case, the evidence showed that it was intended to narrow the discrepancy between the parties' incomes. Given that explanation, we conclude that the essential purpose of the spousal support award was to ensure that wife's standard of living would "not be overly disproportionate to that enjoyed during the marriage." *See, e.g., Barlow and Barlow,* 149 Or App 81, 942 P2d 290, *rev den,* 326 Or 62 (1997) (spousal support award to wife, who had been out of the job market for 20 years to raise the

parties' five children, was "based on the relative incomes of the parties and on wife's need for a reasonable amount of monthly income to maintain an economic standard of living that is not overly disproportionate to what was enjoyed during the marriage").

We must now determine whether wife's remarriage satisfies that purpose. "[T]he first factor in evaluating spousal support after remarriage is the 'potential shared income' of the obligee spouse." *Lenhart and Lenhart*, 213 Or App 480, 487, 162 P3d 292 (2007) (citing *Bates*, 303 Or at 47). The potential shared income is then weighed against the standard of living that the initial award was intended to ensure for the obligee spouse. *Id.* If, as a result of remarriage, an obligee's means of support have increased to the point where, without the spousal support, they are equal to or greater than the income the support was intended to ensure, the support should be terminated, unless it would be inequitable to do so. *Bates*, 303 Or at 47-48 (terminating support); *Barron and Barron*, 240 Or App 391, 246 P3d 500 (2011) (same).

In *Hall and Hall*, 86 Or App 51, 738 P2d 218 (1987), the dissolution court presumed $650 in earnings for the wife and awarded her $500 in spousal support for a total monthly income of $1,150. After dissolution, the wife's individual income increased and she remarried. Her new income was $712.50, and her new husband's income was $1,782, for a total potential shared income of $2,494.50. We held that the spousal support should be terminated, explaining:

> "If we assume that wife now has available to her one-half of her and her new husband's joint income, or $1,247.25 (excluding spousal support), she is now in a better financial position than she was at the time of the judgment when she had an income of $1,150 (including spousal support). Because wife's available income is greater than that provided by the original judgment, which is presumably the most equitable distribution of income between the parties, there has been a sufficient change in her circumstances to justify the termination of spousal support."

*Id.* at 55.

In this case, as in *Hall* and *Barron*, wife's remarriage has increased her potential shared income. The dissolution

judgment was intended to ensure wife a monthly income of $6,200 ($3,200 in employment income and $3,000 in spousal support). After wife remarried, her potential shared monthly income, excluding spousal support, was $44,866 ($3,200 in employment income and $41,666 in Johnson's income). If, as in *Hall*, we presume that one-half of that potential shared income is available to wife, her income has increased from $6,200 to $22,433. The question remains whether, in light of the prenuptial agreement between wife and Johnson, it would be just and equitable to so presume. We conclude that it would be.

In his trial testimony, Johnson candidly acknowledged that the prenuptial agreement was structured to terminate with husband's spousal support obligation. After December 2011, that agreement required Johnson to pay *all* of his and wife's joint living expenses. Although, before that date, the agreement required wife to pay one third of their housing expenses and one half of their remaining joint living expenses, in fact Johnson clearly paid the lion's share of overall family expenses. The sum of $4,000 per month that Johnson was required to pay toward joint housing expenses represented only 10 percent of his monthly income, and it merely scratched the surface of Johnson's actual contribution to wife's economic support. That contribution consisted of a substantial residence and lifestyle, including expensive vacations. As indicators of his extra-contractual largesse, Johnson previously had paid wife $50,000 in return on a short-term investment, and he had cosigned a home equity loan that enabled wife to loan hundreds of thousands of dollars to her son.

The persuasive weight of the evidence showed that, irrespective of the expense sharing formula set out in the prenuptial agreement, after her remarriage to Johnson, wife was able to lead a lifestyle that substantially exceeded her lifestyle during her marriage to husband. Accordingly, to the extent that we have made different findings of fact on *de novo* review from the challenged findings that the trial court made, those findings do not lead to a different conclusion than the trial court reached. We conclude that, as a result of

wife's increased income following her remarriage, the purpose of the spousal support award has been satisfied, and the support award should be terminated.

Affirmed.