Argued and submitted May 6, affirmed on appeal and cross-appeal
December 26, 2013

In the Matter of the Marriage of

Sandra Jean TILSON,
*Petitioner-Respondent
Cross-Appellant,*
*and*

Douglas Victor TILSON,
*Respondent-Appellant
Cross-Respondent.*

Washington County Circuit Court
C103209DRC; A151442

317 P3d 391

Helen C. Tompkins argued the cause for appellant-cross-respondent. On the briefs was Launa Lawrence Helton.

Margaret H. Leek Leiberan argued the cause for respondent-cross-appellant. With her on the briefs was Jensen & Leiberan.

Before Schuman, Presiding Judge, and Duncan, Judge, and Lagesen, Judge.*

LAGESEN, J.

---

* Lagesen, J., *vice* Wollheim, J.

LAGESEN, J.

The issue in this case is whether wife's remarriage approximately five months after the dissolution of her marriage to husband resulted in "a substantial change in economic circumstances" sufficient to permit the trial court to reconsider the spousal support award to wife under ORS 107.135(3)(a),[1] and, if so, whether the trial court abused its discretion when it continued husband's $1,000 monthly maintenance support obligation after terminating husband's $500 monthly transitional support obligation. We hold that the trial court correctly concluded that wife's remarriage resulted in a sufficient change in wife's economic circumstances to authorize the trial court to reconsider the spousal support award and that the trial court acted within its discretion when it continued maintenance support. Accordingly, we affirm.

## I. BACKGROUND

In accordance with our standard of review, we "state the facts consistently with the trial court's express and implied findings, supplemented with uncontroverted information from the record." *Kirkpatrick and Kirkpatrick*, 248 Or App 539, 541, 271 P3d 361 (2012). The parties' 20-year marriage was dissolved on June 9, 2011. At the time of the dissolution, husband earned a monthly gross income of $5,411.18 from his job as a TriMet light-rail operator. Wife earned approximately $726 per month as a self-employed nail technician. The trial court awarded spousal support to wife as follows: $2,000 per month ($1,000 as transitional support and $1,000 as maintenance support) for three months, from May 1 to August 1, 2011; $1,500 per month

---

[1] ORS 107.135 provides, in relevant part:

"(3)  In a proceeding under this section to reconsider the spousal or child support provisions of the judgment, the following provisions apply:

"(a)  A substantial change in economic circumstances of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of support, except that an order of compensatory spousal support may only be modified upon a showing of an involuntary, extraordinary and unanticipated change in circumstances that reduces the earning capacity of the paying spouse."

ORS 107.135(3)(a).

($500 as transitional support and $1,000 as maintenance support) for two years, to August 1, 2013; and $1,000 per month as maintenance support for an indefinite period of time beginning August 1, 2013. The dissolution judgment stated that spousal support was

> "awarded based on the length of the marriage (20 year marriage); the disparity in the parties' income; Wife sacrificed her career in part to help advance Husband in his career and to help care for Husband's son; and Wife is not afforded the same benefits from employment as Husband."

The judgment further stated, "At any point, if Wife obtains employment where she consistently grosses $3,600.00 a month plus full benefits, Husband may [move] the court for a Show Cause hearing regarding modification of spousal support."

Approximately five months later, wife remarried. At the time of dissolution, wife had been cohabitating with her new spouse, Prucha. However, at that point, neither wife nor husband anticipated that wife would marry Prucha. Upon learning of wife's remarriage, husband moved to modify the award of spousal support.

The trial court held an evidentiary hearing in March 2012 to evaluate the parties' respective financial positions. At that time, husband was earning approximately $400 less per month than he had been earning at the time of dissolution because of a reduction in his shift length, but husband did not contend that that reduction in income warranted a reduction in his spousal support obligation. Wife was employed as a cashier for a bark-dust company, a job she had held for several months. She was earning approximately $1,668.33 per month. The job permitted wife to take online classes in her free time at work. Through those classes, wife was developing the skills required to transition into better employment. Prucha was earning at most $3,856.67 per month[2] as a drafter for a manufacturing company. Prucha

---

[2] That number is computed in accordance with the formula set out in the Oregon Uniform Support Declaration form: Gross income = (gross hourly wage × average number of hours worked per week × 52 weeks per year)/12 months per year. Prucha testified inconsistently about his gross hourly wage. This estimate of Prucha's gross income is computed based on Prucha's testimony that he earned $22.25 an hour, the highest wage to which Prucha testified.

had a $413.60 monthly child support obligation and paid $50 a month for his son's health insurance coverage. Wife obtained dental insurance through Prucha's employer, paying for that coverage herself; wife recently had obtained basic medical coverage through her employer.

Wife and Prucha had not commingled their finances and were leery of doing so because of their experiences with prior marriages. Nonetheless, Prucha's intent in marrying wife was to live with her, and to take care of her, for the rest of his life. As a result of her remarriage, wife felt that she no longer needed the $500 monthly transitional support, which was scheduled to run for nearly another year and five months, provided that she could ask the trial court to restore the additional support if her new marriage did not succeed. However, wife felt that she still needed the $1,000 monthly maintenance support.

The trial court concluded that wife's remarriage resulted in an unanticipated "substantial change in economic circumstances" for purposes of ORS 107.135(3)(a) that permitted the court to reconsider the award of spousal support.[3] The court then determined that those changed circumstances warranted the discontinuation of the award of transitional support but did not warrant modification of the maintenance support award. The court reasoned that, notwithstanding wife's remarriage and "the fact that there are some benefits that flow" to wife as result of the remarriage,

"the reality is, she still has to be largely self-sufficient here, and she doesn't have income for that, but I think with the maintenance that's ordered, that will be enough to get her what she needs to help her pay off her debt, have something of a rainy-day fund, but also to survive at a reasonable level."

The court entered a supplemental judgment modifying the award of spousal support, husband timely appealed, and wife timely cross-appealed. On appeal, husband assigns

---

[3] The evidence at the hearing also demonstrated that wife's employment situation had improved since dissolution, a fact acknowledged by the trial court. However, the trial court ultimately ruled that it was wife's remarriage that resulted in the substantial, unanticipated change in wife's economic circumstances.

error to the trial court's decision to continue maintenance support. On cross-appeal, wife assigns error to the trial court's determination that wife's remarriage constituted a "substantial change in economic circumstances" that authorized the court to reconsider the award of spousal support.

## II. STANDARDS OF REVIEW

Husband requests *de novo* review only conditionally, asking that we engage in *de novo* review on appeal if we grant wife's request for *de novo* review on cross-appeal, but not otherwise. Although wife requests *de novo* review on cross-appeal, she has not demonstrated that this is an "exceptional case" warranting *de novo* review.[4] ORS 19.415(3)(b); ORAP 5.40(8)(c); *Kaptur and Kaptur*, 256 Or App 591, 596 n 2, 302 P3d 819 (2013). Accordingly, we decline to review *de novo* on either the appeal or cross-appeal. Instead, we review as follows.

Whether there has been a "substantial change in economic circumstances of a party" sufficient to warrant reconsideration of an award of spousal support under ORS 107.135(3)(a) presents a mixed question of fact and law. We review the trial court's implicit and explicit findings of historical fact regarding the parties' economic circumstances to determine whether those findings are supported by any evidence in the record. *Long and Leduc*, 237 Or App 652, 654, 241 P3d 340 (2010). We review the court's determination that those facts constitute a "substantial change in economic circumstance of a party" under ORS 107.135(3)(a) for

---

[4] Wife asserts that the trial court determined that her remarriage alone, without regard for its effect on her economic circumstances, constituted the threshold substantial change in circumstances sufficient to permit reconsideration of spousal support under ORS 107.135. She further contends that the trial court erred by failing to assess the economic effect of remarriage, and that that legal error by the trial court makes *de novo* review appropriate on the cross-appeal.

Wife is correct that it would have been error for the trial court to conclude that the fact of remarriage alone constituted a substantial change in wife's economic circumstances, regardless of the remarriage's actual effect on wife's economic circumstances. *Thomas and Thomas*, 160 Or App 365, 371, 981 P2d 382 (1999). However, we disagree that the trial court's decision, when viewed in context of the record as a whole, reflects that legal error. Taken as a whole, the record demonstrates that the trial court properly focused on the actual economic effects of remarriage on wife.

legal error. *See generally Weber and Weber,* 337 Or 55, 91 P3d 706 (2004) (reviewing for legal error the determination that particular facts qualified as "substantial change in economic circumstances" under ORS 107.135(3)(a)).

If the changes to the parties' economic circumstances are sufficient to permit reconsideration of an award of spousal support, we review for abuse of discretion the trial court's determination whether and to what extent to modify the award. That standard of review follows from the fact that the trial court's task upon reconsideration of spousal support is to determine what level of spousal support, if any, is "just and equitable under the totality of the circumstances." *Luty and Luty,* 245 Or App 393, 401, 263 P3d 1067 (2011) (footnote omitted). And we review "the trial court's ultimate determination about a 'just and equitable' amount of support for abuse of discretion." *Bailey and Bailey,* 248 Or App 271, 275-76, 273 P3d 263 (2012).

### III. ANALYSIS

A two-part framework governs the determination whether, and to what extent, an award of spousal support should be modified under ORS 107.135(3)(a). *Frost and Frost,* 244 Or App 16, 22-23, 260 P3d 570 (2011). The threshold question is whether there has been "a substantial, unanticipated change in [economic] circumstances since the time of the earlier award." *Tomos and Tomos,* 165 Or App 82, 87, 995 P2d 576 (2000). Absent a qualifying change in circumstances, a trial court lacks authority to modify an award of spousal support. *Weber,* 337 Or at 70. If the requisite change is present, then the trial court must determine what amount of support is "just and equitable under the totality of the circumstances." *Frost,* 244 Or App at 23 (internal quotation marks and ellipses omitted); *see also Barron and Barron,* 240 Or App 391, 397, 246 P3d 500 (2011) (setting forth framework).

A. *Substantial, Unanticipated Change in Economic Circumstances*

Here, the trial court correctly concluded that wife's remarriage resulted in a substantial, unanticipated change in the economic circumstances of the parties sufficient to

permit the court to reconsider the award of spousal support. First, husband and wife both testified that they did not anticipate wife's remarriage at the time of the initial award of spousal support. Given that testimony, the court correctly found that wife's remarriage was unanticipated.

Second, with respect to whether the unanticipated remarriage substantially changed wife's economic circumstances, the key question is the extent to which Prucha's income was, in fact, *available* to the new marital household. *Rubey and Rubey,* 165 Or App 616, 622, 996 P2d 1006 (2000). Although wife contends that the trial court erred by finding that any of Prucha's income was available to her, given the evidence of the couple's separate finances, other evidence supports the court's implicit finding. Prucha testified that his intent in marrying wife was to take care of her for the rest of his life, and wife testified that it would be fair to eliminate the $500 monthly transitional support award, provided that she could seek restoration of the award if the new marriage failed. That testimony supports the inferences that some portion of Prucha's income was available to wife, and that the availability of that income reduced her total need for support by one third in a way that had not been contemplated at the time of dissolution. That, in turn, permitted the trial court to conclude—correctly—that there had been a threshold unanticipated "substantial change in economic circumstances" of wife sufficient to authorize reconsideration of spousal support under ORS 107.135(3)(a).

Wife also argues that *Boni and Boni,* 208 Or App 592, 145 P3d 331 (2006), precludes the conclusion that her remarriage resulted in a "substantial, unanticipated change" to her economic circumstances. It does not. In *Boni,* we addressed whether the wife's remarriage qualified as a "substantial, unanticipated change" to her economic circumstances sufficient to permit reconsideration of spousal support established through a stipulated support agreement. 208 Or App at 598-99. At the time of the dissolution in *Boni,* the wife was cohabitating and sharing expenses with the man who became her spouse. *Id.* at 594-95. The parties' stipulated agreement regarding spousal support took into consideration the wife's expense-sharing arrangement with

her partner in setting the amount of spousal support. *Id.* at 598-99. Because the wife's remarriage did not change her financial relationship with her new spouse, and—more to the point—because the parties' stipulated spousal support award accounted for that financial relationship, we concluded that the remarriage did not constitute a change in the wife's economic circumstances sufficient to permit reconsideration of spousal support. *Id.*

Here, by contrast, the initial support award did not take into account wife's relationship with Prucha; at the time of dissolution, wife did not know in what direction that relationship was headed. In addition, unlike in *Boni*, wife's marriage to Prucha changed her financial relationship with Prucha. In marrying wife, Prucha committed himself to supporting wife in a way that he had not been committed to doing at the time of dissolution. Moreover, as a result of that support, wife herself felt that her circumstances had changed sufficiently to reduce her monthly award by eliminating the $500 transitional support that she was scheduled to receive for another year and five months. Accordingly, *Boni* does not require a different outcome in this case. We therefore conclude that the trial court correctly determined that wife's remarriage, with its attendant benefits, sufficiently changed wife's economic circumstances to permit reconsideration of spousal support.

B.  *"Just and Equitable" Support in the Light of the Award's Original Purpose*

The next question is whether the trial court acted within its discretion by modifying the spousal support award by eliminating the $500 monthly transitional support while maintaining the $1,000 monthly maintenance support. When making the discretionary determination whether and how to modify an award of spousal support because of the obligee spouse's remarriage, the key inquiry for the trial court is the extent to which the remarriage satisfies the purposes behind the original spousal support award. *Bates and Bates*, 303 Or 40, 46, 733 P2d 1363 (1987); *Frost*, 244 Or App at 23. The court's ultimate task is to determine a just and equitable amount of support, in the light of how the remarriage has—or has not—satisfied the original

purposes of the award. *Frost*, 244 Or App at 23-24. Here, neither party claims that the court abused its discretion by eliminating transitional support,[5] and the court permissibly concluded that continuing the $1,000 monthly maintenance support was just and equitable in view of the original purposes underlying the award of spousal support.

As an initial matter, the court permissibly concluded that most of the original purposes behind the award of spousal support were not satisfied by wife's remarriage. The dissolution judgment stated that the purposes of the award were to support wife because of the length of the marriage, because wife had sacrificed her own career to advance husband's career and to care for husband's son, because of the difference in the parties' incomes, and because wife did not have the same benefits from employment that husband did. Wife's remarriage did not satisfy most of those purposes. It did not change the length of her prior marriage, it did not alter the career sacrifices that she made to advance husband's career and to care for husband's son, and it did not result in wife receiving full benefits from employment (or through Prucha).

Further, although wife's remarriage reduced the parties' income gap, the trial court acted within its discretion in concluding that the reduction in the differential between the parties' incomes did not fully satisfy the award's original purpose. The dissolution judgment stated that husband could seek to modify spousal support if wife consistently earned $3,600 a month with full benefits. That indicates that one of the primary purposes of the spousal support award was to provide support to wife, in the light of her contributions to the parties' 20-year marriage, until she was earning $3,600 a month, with full benefits, independently of the spousal support award. Wife's remarriage to Prucha did not cause her income to reach that level, even if we assume that all of Prucha's income, except that amount

---

[5] Although wife argues on cross-appeal that the trial court erred by eliminating transitional support, she bases that argument on the theory—which we have rejected—that the court lacked statutory authority to reconsider the award of spousal support. Wife does not assert that it was an abuse of discretion for the trial court to eliminate transitional support, provided that the court had the predicate authority to reconsider the spousal support award.

committed to his support and insurance obligations for his son, was available to the marital household upon his marriage to wife.

Specifically, at the time of the modification hearing, as a result of remarriage and new employment, wife's monthly potential shared income, excluding spousal support, was, at most, $2,530.70. Prucha had income of $3,393.07 per month after fulfilling his child support obligation and paying for his son's insurance coverage. Wife was earning approximately $1,668.33 per month from her job. Therefore, their household potential shared income was $5,061.40, if all of Prucha's income is treated as available to the marital household, apart from that portion of his income committed to his son. If wife is treated as having access to half that amount, her potential shared income on remarriage was only $2,530.70. *Barron*, 240 Or App at 401-02 (illustrating computation of a spouse's potential shared income upon remarriage); *Hall and Hall*, 86 Or App 51, 55, 738 P2d 218 (1987) (same). In fact, even if wife's $1,000 monthly maintenance support award is added to wife's portion of the household potential shared income, she would still have an income under the $3,600 monthly income that the support award was intended to help wife achieve.

Husband argues that the provision in the dissolution judgment specifying that husband could seek to modify spousal support if wife consistently earns $3,600 a month is unlawful to the extent that it prohibits modification of support before wife achieves that income. He further suggests that, as a result, we should not consider the $3,600 target income for wife in assessing whether the trial court abused its discretion in continuing maintenance support. We reject that argument. We do not read the provision to unlawfully limit husband's ability to request modification of spousal support upon a substantial, unanticipated change in the parties' economic circumstances, even if wife has not yet achieved a $3,600 monthly income. Indeed, the trial court did not read that provision to so limit husband's ability to request modification; the trial court, in fact, modified spousal support even though wife had not achieved that income level. Rather, we consider the provision because it is

probative of the original spousal support award's objective. It shows that one purpose of spousal support is to provide financial support to wife until she can achieve a consistent income level of $3,600 a month, with full benefits. Because that purpose has not been satisfied, by wife's remarriage or otherwise, the trial court permissibly concluded that it was just and equitable to continue the $1,000 monthly maintenance support.

In sum, the record before the trial court permits the conclusion that wife's remarriage did not address some of the purposes of the original spousal support award, and did not fully satisfy the purposes that it did address. The record also permits the conclusion that it remains just and equitable for wife to receive the $1,000 monthly maintenance support. Accordingly, the trial court acted within its discretion when it opted to continue maintenance support, after eliminating transitional support.

Affirmed on appeal and cross-appeal.