Argued and submitted March 21, 2016, reversed and remanded August 23, 2017

In the Matter of the Marriage of

Melissa May DAVIS,
fka Melissa May Reynolds,
*Petitioner-Appellant,*
*and*

Clement Pierre LALLEMENT,
*Respondent-Respondent,*
*and*

Nadjalisse Claire REYNOLDS-LALLEMENT,
Child 18 years of age or older but under 21 years of age.

Clackamas County Circuit Court
DR10100330; A158531

401 P3d 1230

Philip F. Schuster, II, argued the cause and filed the briefs for appellant.

Peter Bunch argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

## ORTEGA, P. J.

Wife appeals the trial court's supplemental judgment granting husband's motion to modify spousal support. The court concluded that there was a substantial change in wife's economic circumstances and terminated husband's spousal support and life insurance obligations. Because we conclude that the court's factual findings regarding wife's access to her new husband's income are unsupported by the record, leaving us unable to determine whether wife's remarriage constituted a substantial change to her economic circumstances, we reverse and remand.

We decline to exercise our discretion to review *de novo* as wife requests because she has not demonstrated that this is an "exceptional case" warranting such review. *See* ORS 19.415(3); ORAP 5.40(8)(c). Accordingly, we recount the facts "consistently with the trial court's express and implied findings, supplemented with uncontroverted information from the record." *Tilson and Tilson*, 260 Or App 427, 428, 317 P3d 391 (2013) (internal quotation marks omitted).

The parties were married for 20 years and have two children together. They divorced in 2011. As part of the dissolution judgment, the court awarded wife $2,000 per month in indefinite maintenance spousal support. The purpose of that initial award was to maintain wife's upper middle class standard of living, which the court concluded she could not maintain on her own. Wife is permanently disabled and received social security benefits in the amount of $1,131 per month at the time of dissolution. Husband, in contrast, made $10,025 per month.

In 2014, wife remarried. Before her remarriage, wife and her new husband, Davis, who had two children of his own from a prior marriage, signed a prenuptial agreement with the intent of defining "the respective responsibilities that each [would] have regarding their payment of separate and joint expenses during the marriage." After wife's remarriage, husband then moved, in relevant part, to terminate or reduce the spousal support award. He argued that there had been a change in wife's circumstances and that she now had sufficient income support from Davis to

eliminate the need for spousal support. By that time, wife's disability payments had slightly increased to $1,209, and her and husband's older daughter was in college and no longer living at home full time.

The court held a hearing on husband's motion where it heard testimony from the parties, as well as Davis.[1] At the conclusion of the hearing, the trial court announced its findings on the record, stating:

"[T]he court may consider the combined income of wife and her spouse in determining whether wife's need for support continues substantially as it was originally, which is the test for whether modification or termination of spousal support is appropriate after remarriage. Today wife argued that her prenuptial agreement proves that her finances have not been commingled with those of her spouse, therefore her spouse's income should not be considered as something that helps determine whether her need for support continues substantially as it was originally.

"I have carefully considered whether the prenuptial agreement in this case has a preclusive effect on the presumption that [wife's] spouse's income supplements and combines with [wife's] income, reducing or eliminating her need for support from [husband]. I conclude that the prenuptial agreement is unpersuasive evidence of the couple's financial obligations. One compelling reason I reached that conclusion is that the prenup purports to segregate the spouse's incomes and obligations such that Mr. Davis is impliedly indemnified from financial obligation to [wife] or to [her children]. The provisions that purport to achieve that segregation, however, are contrary to Oregon law. Under ORS 108.045,[2] during the duration of the marriage, a stepparent has a legal obligation to the family and to the stepchildren of a designated custodial parent. I do not believe the prenup * * * override[s] Mr. Davis's statutory financial obligations.

"Therefore, I believe that some portion of Mr. Davis's income is properly deemed to combine with Ms. Davis's

---

[1] The same judge presided over the dissolution and modification proceedings.

[2] ORS 108.045(1) provides, in part: "The expenses of the family and the education of minor children, including step-children, are chargeable upon the property of both husband and wife, or either of them."

income for the purpose of determining whether her need for support continues 'substantially as it was originally' ***.

"I find that half of Mr. Davis's monthly income, which is $3,718.00, should be combined with [wife's] income to compare her current financial picture to the financial picture that she had after the divorce judgment was entered in this case.

"Since [wife's] combined income with her new spouse raises her financial resources well above the total that the spousal support award achieved for her after the divorce, and since only her youngest child remains home full time at this point, I conclude that her need for support does not continue substantially as it was originally. For that reason I order that the spousal support award be terminated as of December 2014.

"Since spousal support is no longer appropriate, I am also eliminating the need for [husband] to continue life insurance for the benefit of [wife] as security for spousal support payments that will no longer be made."

On appeal, wife challenges the trial court's termination of the spousal support award and the life insurance requirement, raising various interrelated arguments in two assignments of error. Wife's arguments primarily concern the court's findings regarding her access to Davis's income and the effect of the prenuptial agreement as to that determination. Ultimately, however, we understand the crux of wife's argument to be that the trial court erred in its determination that wife had access to Davis's gross income and abused its discretion in terminating the spousal support award, in part because it failed to make an express finding that termination of the award was just and equitable under the circumstances.

Husband, in turn, argues that the trial court properly terminated the spousal support award and that wife failed to preserve two of her arguments. First, husband argues that wife failed to preserve her argument that the court failed to make an express finding that termination of the spousal support award was just and equitable. Further, husband argues that, even if wife's challenge was preserved,

the court did not err because its finding that termination of the award was just and equitable was implicit in its ultimate decision. We agree with husband that the court impliedly found that termination of the spousal support award was just and equitable, as that was the ultimate question. *See Reaves and Reaves*, 236 Or App 313, 319, 236 P3d 803 (2010) ("The ultimate inquiry * * * is whether a modification of support is 'just and equitable' under the totality of the circumstances."). Thus, we reject wife's argument that the court failed to make that determination.

Second, husband argues that wife did not preserve her appellate arguments challenging the court's conclusion that the prenuptial agreement was contrary to public policy under ORS 108.045. We agree with husband on that point. Although the court made findings on that specific issue *sua sponte* at the end of the proceedings, there is no indication that wife brought the alleged error to the court's attention at that point or in the weeks between the court making its oral findings and the final judgment being entered. As such, we conclude that wife did not preserve the arguments she now raises regarding the effect of a prenuptial agreement in light of ORS 108.045, and we do not address them further. *See Mitchell and Mitchell*, 271 Or App 800, 808, 353 P3d 28 (2015) (an issue was not preserved where husband failed to bring the purported error to the court's attention, despite ample opportunity to do so, during the period of time between the court's initial finding and entry of the final judgment); *McDougal v. Griffith*, 156 Or App 83, 86-88, 964 P2d 1135 (1998), *rev den*, 328 Or 330 (1999) (an issue was not preserved where the plaintiff did not bring the alleged error to the court's attention to allow the court to address or correct the error prior to entry of the judgment).

We next turn to the merits of this case, which narrow to whether and to what extent the court was allowed to modify wife's spousal support award.[3] Our analysis is governed by a two-part framework. First, as a threshold matter, a court must determine "whether there has been

---

[3] A trial court has authority to modify a previously awarded spousal support award under ORS 107.135(1)(a), consistent with the requirements set out in subsection (3).

a *substantial, unanticipated* change in [economic] circumstances since the time of the earlier award." *Tilson*, 260 Or App at 432 (internal quotation marks omitted; emphasis added; brackets in original). In reviewing the court's determination as to that issue, we "review the trial court's implicit and explicit findings of historical fact regarding the parties' economic circumstances to determine whether those findings are supported by any evidence in the record." *Id.* at 431. We then "review the court's determination that those facts constitute a substantial change in economic circumstances of a party under ORS 107.135(3)(a) for legal error." *Id.* at 431-32. Second, if the court concludes that there has been a substantial, unanticipated change in economic circumstances, "then the trial court must determine what amount of support is 'just and equitable under the totality of the circumstances.'" *Id.* at 432 (quoting *Frost and Frost*, 244 Or App 16, 23, 260 P3d 570 (2011)). If we reach that determination, then we review the court's ultimate conclusion for abuse of discretion. *Id.*

Here, wife does not dispute that her remarriage was an unanticipated change in her circumstances. However, the question remains whether wife's remarriage caused a substantial change in her economic circumstances. That, in turn, depends on the extent to which Davis's income was, in fact, available to wife. *Id.* at 433.

As noted above, the trial court found that $3,718, or half of Davis's gross monthly income, was available to wife. However, we cannot conclude that that finding is supported by the record. Although Davis's paystubs support a finding that $3,718 was half of Davis's gross taxed income, the record does not indicate that that amount was, in fact, available to wife. We have previously indicated that "the determination of whether a party should have a new spouse's income attributed to him or her, and in what amount, is a case-specific inquiry." *Jones and Jones*, 172 Or App 199, 204, 17 P3d 491, *adh'd to on recons*, 174 Or App 33, 23 P3d 988 (2001); *see also Rubey and Rubey*, 165 Or App 616, 622, 996 P2d 1006 (2000) (courts cannot always presume that a new spouse's income is available). Here, it appears that the court made a general assumption that half of Davis's gross

income is available to wife. Although in some instances that assumption may be appropriate, it is not so in this case. Even leaving aside the prenuptial agreement between wife and Davis, there is evidence in the record indicating that wife did not have access to the entire amount determined by the court, given Davis's independent financial obligations. For instance, Davis testified that he has joint custody of his two children from a prior marriage and that they spend about 42 percent of their time with him. He stated that he has an ongoing $500 spousal support obligation, which is automatically deducted from his income, and that he expected to incur about $15,000 in legal fees related to ongoing child support and custody issues. Additionally, Davis, who is a state police trooper, indicated that he pays monthly union dues. The trial court did not account for any of those expenses in reaching the $3,718 figure.

Husband acknowledges that the trial court did not subtract even the child support obligation but contends that that decision was within the court's discretion. We disagree. The trial court's task was to determine whether and to what extent Davis's income was *actually* available to wife, which is not a matter of discretion. Rather, the overall record must support the court's factual findings as to what amount of income is, in fact, available to wife. In this case, because the court did not take into consideration the ways in which Davis's independent obligations might limit the availability of his income to wife, we cannot conclude that $3,718 is actually available to wife.

Accordingly, as a threshold matter, we cannot determine whether wife's remarriage constituted a substantial change in her economic circumstances. Although the record suggests that some portion of Davis's monthly income may be available to wife, the trial court's findings are insufficient to establish the extent to which wife's overall economic circumstances have changed, if at all.[4] Accordingly, we reverse and remand for the court to make factual findings, in the first instance, as to the extent to which Davis's independent obligations limit wife's access to his income, and to determine

---

[4] On appeal, wife acknowledges that she may have access to, at most, $800 of Davis's income.

whether termination or modification of the spousal support is just and equitable in light of those new findings.[5]

Reversed and remanded.

---

[5] Given our disposition, we decline to consider the trial court's termination of husband's obligation to maintain a life insurance policy, because that issue is contingent on the spousal support award.