Argued and submitted December 13, 2019, reversed and remanded
March 11, 2020

In the Matter of the Marriage of

Rhonda Darlene BRAUN,
*Petitioner-Respondent,*
*and*

Lavelle Herman BRAUN,
*Respondent-Appellant.*

Umatilla County Circuit Court
CV151772; A169190

461 P3d 1086

After losing his job, husband moved to terminate his $1,800 monthly spousal support obligation to wife. The trial court held a hearing, at which husband offered evidence regarding his financial circumstances. The court made express findings, including that husband did not leave his prior employment voluntarily or to avoid the support obligation, that husband hoped to grow the restaurant business that he had recently purchased, and that husband's current monthly income was "less than $1000 per month." The court then ordered that husband's spousal support obligation to wife would continue but in the reduced amount of $900 per month. On appeal, husband argues that, on the existing record, the trial court abused its discretion in ordering husband to pay nearly all of his income as spousal support. *Held*: The trial court abused its discretion. Given the record and the trial court's express findings, the support obligation ordered by the trial court falls outside the range of reasonableness.

Reversed and remanded.

Ronald J. Pahl, Judge. (Supplemental Judgment entered October 9, 2018)

Eva J. Temple, Judge. (Supplemental Judgment entered October 31, 2018)

George W. Kelly argued the cause and filed the brief for appellant.

John L. Barlow argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Reversed and remanded.

## AOYAGI, J.

After losing his job, husband moved to terminate his spousal support obligation to wife, under ORS 107.135. The trial court entered a judgment continuing the support obligation but reducing its monthly amount from $1,800 to $900. On appeal, husband argues that the trial court abused its discretion, given its express finding that husband's monthly income is "less than $1000" and the absence of any other findings to support his being ordered to pay nearly all of his income as spousal support. For the reasons that follow, we reverse and remand for further proceedings.

Husband requests *de novo* review but has not explained why this is an exceptional case, so we decline to conduct *de novo* review. *See* ORS 19.415(3)(b); ORAP 5.40(8). Accordingly, "[w]e state the facts consistently with the trial court's express and implied findings, supplemented with uncontroverted information from the record." *Tilson and Tilson*, 260 Or App 427, 428, 317 P3d 391 (2013) (internal quotation marks omitted).

The parties divorced in May 2016. The trial court entered a stipulated general judgment of dissolution of marriage, signed by them, that included findings and addressed property distribution and spousal support. As stated in the judgment, at the time of their divorce, husband was 51 years old, wife was 58 years old, and they had been married for 17 years. The parties enjoyed a "comfortable standard of living" while married. Husband was employed by the Oregon Department of Corrections (DOC), earning a gross monthly income of $8,269, with eligibility for raises and opportunities for career advancement. Wife was unable to work due to a disability but had gross monthly income of $3,200 from disability, pension, and retirement payments and, at the time of the divorce, was anticipating additional monthly income from a rental apartment. The parties' house, farm, and farming equipment were awarded to wife. Husband's retirement account—then valued at roughly $60,000—was awarded to husband. Husband agreed to pay $1,800 per month to wife, indefinitely, as maintenance spousal support.

        In late December 2017, husband was terminated
from his DOC job. In January 2018, he moved to terminate
spousal support, based on the change in his financial cir-
cumstances. Wife opposed the motion. The trial court held a
hearing in September 2018, which lasted less than an hour,
and at which husband was the only witness. The next five
paragraphs recount husband's testimony.[1]

        Husband testified that, after losing his job, he sub-
mitted about three job applications per week but was unable
to find employment. He had three job interviews, but he did
not get one job because he does not have a college degree, and
he did not get the other two jobs because the reason for his
DOC termination—termination for cause based on a false
statement on a travel expense report—had been publicized
in the newspaper. In the past, husband owned a construc-
tion company, but he has hip problems that now restrict his
ability to do that type of work.

        After going "about three months without work,"
husband saw "an opportunity" and bought a restaurant for
$225,000 in April 2018. His partner, JS, who lives with him,
contributed $40,000; his mother contributed $35,000; and
husband took a loan from the seller. Husband testified that
his business expenses are $19,720 monthly, which includes
paying two employees. JS does not receive any wages but
receives $460 monthly as repayment of her investment.
Husband pays himself $1,000 monthly from the business.
Husband's bank statement from June 2018 shows a $1,000
deposit, which husband testified was from the business.
After paying business expenses and paying himself $1,000,
the business "nets between $500 and $700 a month."

        Prior to buying the restaurant, in the months imme-
diately following his DOC termination, husband received
money from DOC for his "final check" and "[his] deferred
comp that [he] cashed out."[2] After buying the restaurant,

---

[1] The record is very slim, and husband's testimony, albeit uncontested, is
imprecise on certain issues. We therefore describe the record with caution, so as
to avoid engaging in any factfinding. Nothing in this opinion should be viewed as
constraining the trial court's factfinding on remand.

[2] According to the record, husband received $14,489.54 in late December
2017, $4,132.04 in January 2018, $4,295.14 in February 2018, and $6,702.85 in
March 2018.

husband received another $15,000 or $16,000 from DOC as part of a settlement related to his termination.

At the time of the hearing, husband was in the process of purchasing a house for $150,000. He had recently been living in a camper for about four months. Husband had taken an $80,000 loan from an individual (not a bank) to purchase the house. Husband had also cashed out his retirement, netting him about $68,000 after federal taxes but before state taxes, to buy the house.

Husband testified that his personal expenses are $3,041.15 per month, of which "half" is paid by JS. That is, husband and JS each pay about $1,520 per month for husband's personal expenses. It is unclear whether that amount includes the $670 house payment that husband will owe when his house purchase closes.[3]

At the close of the evidence, the parties gave closing arguments. Wife moved to dismiss, arguing that husband had not proved a change in circumstances, that his job loss was "voluntary," and that spousal support should be continued at $1,800 per month. Wife made no arguments as to what an appropriate amount of spousal support might be in the event that the trial court continued support but reduced the amount. For his part, husband summarized the evidence of his financial circumstances and argued that he could not afford spousal support. The court took the case under advisement.

The trial court subsequently issued a written opinion with findings. As to husband, the court found that husband is 53 years old, does not have a college education, was terminated from his employment in December 2017, did not leave his employment voluntarily or to avoid the support obligation, was denied unemployment, cashed out the retirement that he was awarded in the divorce to buy a business, has current monthly income of "less than $1000 per month,"

---

[3] While testifying about his business expenses, husband mentioned that he "ha[s]n't had a house payment" and that, "[i]f the papers all go through today, that's another $670 a month." When husband later testified about his personal expenses, he did not say whether the $3,041.15 included an amount for rent or the house payment. The trial court did not make a finding about husband's living expenses.

and hopes to grow the business. As to wife, the court found that wife has income of $2,863 per month,[4] is "disabled and unable to obtain future employment income or assets," and received the home and farm in the divorce.

After stating its findings, the court concluded:

"Based on the totality of the circumstances the court finds that Husband did not make a voluntary reduction of income or act in bad faith or for the purpose of avoiding his support obligation. Husband's earned income has reduced and [he] has cashed in his retirement account to buy an ongoing business.

"The Court will modify the spousal support award to wife to $900 per month as of 1 February 2018. Wife is awarded her reasonable and necessary attorney fees pursuant to ORS 107.135."

The court thereafter entered a supplemental judgment of modification, ordering husband to pay spousal support to wife in the amount of $900 per month, indefinitely, as well as ordering him to pay $9,900 in arrears, plus interest. The court later entered a supplemental judgment regarding attorney fees, ordering husband to pay $3,781 to wife for her attorney fees and costs. Husband appeals both supplemental judgments.

In his first assignment of error, husband challenges the supplemental judgment of modification, arguing that the trial court abused its discretion when it continued spousal support at $900 per month. When a party seeks modification or termination of spousal support, the trial court "must determine whether there has been a substantial, unanticipated change in economic circumstances since the time of the earlier award." *Davis and Lallement*, 287 Or App 323, 327-28, 401 P3d 1230 (2017) (emphases, internal quotation marks, and brackets omitted); *see also* ORS 107.135. If there has been, the trial court "must determine what amount of support is just and equitable under the totality of the circumstances." *Davis*, 287 Or App at 328 (internal quotation

---

[4] As previously noted, the general judgment contained a finding of a higher income amount for wife. The finding in the supplemental judgment appears to be based on a more recent uniform support declaration by wife and is unchallenged on appeal.

marks omitted). Here, no one challenges the trial court's change-in-circumstances determination. The only disputed issue is the trial court's "ultimate determination about a just and equitable amount of support," which we review for abuse of discretion. *Tilson*, 260 Or App at 432 (internal quotation marks omitted). "[T]here is a range of reasonableness for a 'just and equitable' award of spousal support." *Brown and Brown*, 259 Or App 618, 627, 315 P3d 422 (2013).

Husband argues that the trial court abused its discretion in ordering him to pay $900 per month of spousal support, particularly given the court's express finding that husband's income is "less than $1000 per month." Husband argues that the court should have terminated support altogether—given that, as husband puts it, his "prior employment has ended, his new employment pays less than minimum wage, and wife is financially better off than he is"—or at least temporarily reduced support to a "nominal" amount. Noting the trial court's lack of explanation for its ultimate determination, husband argues that, if the court implicitly found that the restaurant would generate more income in the future, there was no evidence to support such a finding. Further, husband argues, the trial court's "decision took no account of husband's present reality (*i.e.*, an income of but $1,000 monthly)" when ordering him to pay $900 per month starting immediately. Husband requests that we remand to the trial court for reconsideration.

In response, wife makes three arguments. Her primary argument is that it is reasonable to infer from husband's testimony that he has "confidence in his investment," as "demonstrated by his willingness to cash in his retirement and take on debt to purchase the business," and that he "expects [it] to ultimately generate substantial income to him." Wife argues that $900 is therefore an appropriate support amount, because husband "is capable of earning much more than the income he testified to during the trial, given that he was just starting a new business." (Husband had purchased the restaurant about six months before the hearing.) In wife's view, the court "can and did reasonably infer from [h]usband's testimony that [h]usband's business will generate more income in the future."

Wife's other two arguments are made only briefly. She argues that some of the restaurant's $500 to $700 of net monthly profits should be attributed to husband as income—although that argument appears to be inconsistent with the trial court's express finding that husband's income is "less than $1000 per month." And she argues that the trial court "can and did take into account that [h]usband's household benefits from the business, in that his domestic partner is also paid monthly from the business"—although it is unclear how the court could have taken that into account to reach the result that it did, given that the only evidence was that JS receives no wages from the business, receives $460 monthly as repayment of her investment, and pays at least $1,520 toward husband's monthly expenses.

"In determining whether a modification of a support award is appropriate, the overriding consideration is what is just and equitable under the totality of the circumstances." *Harp and Harp*, 214 Or App 520, 524, 167 P3d 457 (2007) (internal quotation marks and ellipses omitted). "[I]n modifying a support award, the court focuses on all of the circumstances that have changed since the dissolution." *Id*. With respect to income, the court is "not restricted to consideration of what either party is presently receiving but may consider the parties' earning capacities and potential future income." *Id*. At the same time, "in imputing potential income, a court may not merely speculate"; it only "may impute potential income based on earning capacity where there is sufficient information to make an informed assessment." *Id*.; *see also Hendgen and Hendgen*, 242 Or App 242, 250-51, 255 P3d 551 (2011) (concluding that, even if the husband was unlikely to remain retired and had "greater earning capacity" than his current income level, it "would be pure speculation to place a dollar figure on what that additional income might be," given "the absence of evidence" on the issue—while also noting that, "[s]hould the parties' earning capacities become less speculative in the future, that could constitute a substantial change in circumstances justifying a reconsideration of the spousal support"). Further, a party's ability to pay the support is necessarily part of the "just and equitable" determination. *See Hendgen*, 242 Or App at 250-51 (concluding that the trial court's spousal support award

of $4,000 per month "was purely speculative, far exceeds husband's ability to pay, and was not just and equitable").

Here, the trial court expressly found that husband's income was "less than $1000 per month" and then concluded, without explanation, that it was just and equitable for him to pay spousal support of $900 per month to wife, who has $2,863 per month of her own income (before spousal support), and to do so indefinitely. The court did not make any findings about husband's living expenses, but husband's uncontested testimony put his personal expenses at $1,520 per month or more.

On this record, we are unable to discern any basis for the trial court's ultimate determination that would not be an abuse of discretion. If the trial court based its decision solely on its express factual findings—as one might expect, given that it issued a written opinion with express factual findings—those findings are insufficient to support the ultimate determination. Conversely, to the extent that the trial court relied in part on unexpressed factual findings, we cannot discern what those additional factual findings might have been or, in any event, how they could combine with the court's express findings in such a way as to permit its ultimate determination. On appeal, wife points to the court's finding that "[h]usband and his live-in partner hope to grow the [restaurant] business," but "hope" alone cannot explain the court's decision. A finding that a person generally hopes that business will improve is not a finding regarding his actual future earning capacity, nor is there any evidence in the record regarding husband's actual future earning capacity. And, as previously noted, wife's other appellate arguments regarding potential bases for the trial court's ruling do not explain how the court's support determination could fall within the range of reasonableness, given the express findings that the court made.

We therefore agree with husband that the appropriate disposition is to reverse the supplemental judgment of modification and remand for further proceedings. We cannot say that the trial court's *only* option was to terminate support altogether. However, given the court's express findings, ordering husband to $900 monthly in spousal support

falls outside the range of reasonableness, and the judgment cannot stand.

That leaves husband's second assignment of error, in which husband challenges the supplemental judgment regarding attorney fees. Because we have reversed the underlying supplemental judgment of modification, we reverse the supplemental judgment regarding attorney fees as well. *See* ORS 20.220(3) ("When an appeal is taken from a judgment under ORS 19.205 to which an award of attorney fees or costs and disbursements relates[,] *** [i]f the appellate court reverses the judgment, the award of attorney fees or costs and disbursements shall be deemed reversed[.]").

Reversed and remanded.