Argued and submitted January 9, affirmed on appeal and cross-appeal July 26, petition for review denied December 28, 2017 (362 Or 300)

In the Matter of the Marriage of

Elizabeth Anne AAROE,
*Petitioner-Appellant*
*Cross-Respondent,*
*and*

David William AAROE,
*Respondent-Respondent*
*Cross-Appellant.*

Clackamas County Circuit Court
DR10020008; A159444

400 P3d 1024

Philip F. Schuster, II, argued the cause and filed the briefs for appellant-cross-respondent.

Kimberly A. Quach argued the cause for respondent-cross-appellant. With her on the briefs was Quach Family Law, PC.

Before DeHoog, Presiding Judge, and Hadlock, Chief Judge, and Sercombe, Senior Judge.*

_____

* Hadlock, C. J., *vice* Flynn, J. pro tempore.

### DEHOOG, P. J.

In this domestic relations case, wife appeals a judgment modifying her spousal support and awarding her indefinite maintenance support in the amount $17,000 per month. Wife requests *de novo* review and raises three assignments of error. She contends that the trial court erred in finding that she had not established that she had Lyme-Babesia disease; that it abused its discretion in denying her request to make the spousal support modification retroactive; and that the amount of the court's award was not just and equitable under the circumstances. Husband cross-appeals and assigns error to both the amount and duration of the award. He argues that, in light of what he views as the court's express findings, it was an abuse of discretion to increase the award in an amount greater than the change in circumstances justified and to make the new award indefinite. We reject wife's assignments of error without written discussion and write only to address husband's cross-appeal regarding the amount and duration of the award. For the reasons that follow, we conclude that the court did not abuse its discretion and, accordingly, we affirm on husband's cross-appeal.

We take the facts from the evidence presented at trial and limit our discussion to those facts relevant to husband's cross-appeal, which are largely undisputed. Husband and wife married in 1996. In 2010, when wife and husband were 51 and 53 years of age, respectively, wife petitioned for indefinite separation.[1] Following a trial on wife's petition, the trial court made the following findings of fact:

- Husband's income was at least $500,000 per year;
- Wife did not have an income at the time of trial;
- Wife would have investment income following the trial because her award of "approximately $2,000,000 in non-retirement assets" would give her "the ability to use [those] assets to generate $50,000 per year in investment income";
- Wife was "very employable at a range of jobs" and "should be able to secure *** employment within 12 months" paying "at least $60,000 per year";

---

[1] The trial court subsequently converted wife's petition for separation to a dissolution petition at her request. *See* ORS 107.465 (allowing for that procedure).

- Wife's proposed $25,000 per month in spousal support did "not reflect historical spending levels" and was "inflated by costs that [did not] currently exist and [were] unlikely to exist in the future"; and

- Wife's "reasonable living expenses [were] * * * $13,500 per month, together with another $3,500 per month for income taxes," giving "her necessary living expenses total[ing] $17,000 per month."

Based on those findings, the court entered a general judgment (the 2011 judgment) that dissolved the parties' marriage, divided their assets, and, in relevant part, ordered the following:

"SPOUSAL SUPPORT

"A. [Wife] is awarded spousal maintenance and [husband] shall pay spousal maintenance to [wife] in the amount of $7,000 per month beginning May 1, 2011, and continuing * * * for a period of 84 months with the last payment due on April 1, 2018, when [husband's] obligation to pay spousal maintenance shall automatically terminate; and,

"B. [Wife] is awarded transitional spousal support and [husband] shall pay transitional spousal support to [wife] in the amount of $8,000 per month, beginning May 1, 2011, and continuing * * * for a period of six months ending with the payment due on October 1, 2011, and, thereafter, beginning on November 1, 2011, [husband] shall pay [wife] $5,000 per month for a period of 18 months ending with the payment due on April 1, 2013, for a total of 24 months of transitional spousal support, when [husband's] obligation to pay transitional spousal support shall automatically terminate."[2]

Thus, under the 2011 judgment, wife was to receive transitional and maintenance support totaling $15,000 for six

---

[2] Following that first trial, wife objected to the trial court's findings and conclusions regarding spousal support and asked the court to modify its award. The court rejected wife's request and explained that, in fashioning the award, it had relied heavily on wife's ability to obtain employment, while recognizing that "it was going to take a period of time to get that started, which [wa]s the reason for the 18 months, as opposed to just a year, [of] transitional support." The court also explained that, given the court's award of "non-retirement" assets to wife, she would have the ability to generate investment income. The court did not further explain how the amount and duration of the award correlated to the findings of wife's reasonable monthly expenses.

months, transitional and maintenance support totaling
$12,000 for 18 months after that, followed by five years
of maintenance support only in the amount of $7,000 per
month. Thereafter, she was to receive no further support
from husband. Neither husband nor wife appealed that
judgment.

In 2013, wife, citing a substantial and unantici-
pated change in circumstances, moved to modify the 2011
judgment. *See* ORS 107.135(3)(a) (an award of spousal sup-
port may be modified based on a finding that there has
been a substantial and unanticipated change in economic
circumstances since the time of the earlier award). Among
other things, she asserted that, since entry of the 2011
judgment, she had become physically disabled due to Lyme-
Babesia disease; that she had, as a result, lost her ability
to obtain employment; and that she had experienced a dra-
matic increase in her reasonable and necessary expenses.
Accordingly, wife asked the court to increase her monthly
maintenance support to well over $25,000 per month and to
make the new award indefinite.[3]

In 2014, a hearing was held on wife's motion to
modify. Following the hearing, the trial court issued a final
report, in which it noted that wife had been displeased with
the 2011 judgment, that she had "worked to undermine the
Court's findings [since the time of that judgment]," and
that "the evidence [presented during the 2014 hearing] sup-
port[ed] a conclusion [that wife wa]s seeking [reconsider-
ation of that judgment]." Despite that observation, the court
concluded that, notwithstanding wife's improper efforts to
relitigate the issues conclusively determined by the 2011
judgment, she had established a substantial and unantici-
pated change in circumstances since entry of that judgment.
That was because

"[wife's] displeasure with the Court's [2011] ruling resulted
in a dramatic downward spiral into deep depression and
impaired thinking, which negatively affected her health.

---

[3] Wife's Uniform Support Affidavit, UTCR 8.010(4), listed monthly expenses
exceeding $30,000, and wife argued for a monthly award in various amounts
throughout the proceedings, but always in an amount of at least $25,000, the
amount she had sought in the initial proceeding.

"*****

"[Wife] is suffering from an engulfing mental illness.

"*****

"[I]t is clear that [wife's] mental condition has worsened since the conclusion of the trial ***.

"*****

"[The 2011 judgment found wife] to be highly employable; that neither mental nor physical problems would preclude employment, and that she was capable of working on a full-time basis. On these specific findings I find there has been a change of circumstances."

The court found that wife's catastrophic mental decline was "prolonged, invasive, and damaging" and that a consequence of that decline was that wife was no longer employable. Accordingly, the court found that wife no longer had the ability to earn "approximately $60,000" and that her ability to "earn any money [wa]s extremely limited."

The trial court rejected, however, the contention that wife's reasonable monthly expenses had increased beyond $17,000 as a result of that change in circumstances. The court instead found that

- wife's "mental health deterioration has prevented her from having a consistent health care plan and *** as a result, she has overspent on healthcare costs";

- wife was "unnecessarily living a lifestyle substantially in excess of her necessary living expenses total of $17,000 per month, which [wa]s inconsistent with her historical spending, and inconsistent with the lifestyle enjoyed during the course of the marriage"; and

- wife had not established "a need for more support," and her needs remained $17,000 per month.

Based on those findings and conclusions, the court explained that, in its view

"no less than six *** [o]f the eleven criteria the Court is directed to consider under ORS 107.105 *** compel a conclusion of indefinite maintenance support. These are:

"(i) The duration of the marriage;

"(ii)  The age of the parties;

"(iii)  The health of the parties, including their physical, mental and emotional condition;

"(iv)  The standard of living established during the marriage;

"(v)  The relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property; and

"(vi)  The financial needs and resources of each party."

Accordingly, the court entered a supplemental judgment (the 2015 judgment) that modified spousal support and prospectively ordered indefinite support of $17,000 per month. Both husband and wife appeal the 2015 judgment.

As noted, we reject wife's arguments on appeal without written discussion and write only to address husband's cross-appeal. Husband contends that the trial court abused its discretion in fashioning the modification award, because the change in circumstances on which the court relied did not justify modifying spousal support from a limited duration award of $7,000 per month to an indefinite award of $17,000 per month. As husband views the court's ruling, the only substantial and unanticipated change in circumstances that it found was that wife could no longer earn $5,000 per month. Husband further notes the court's specific finding that wife's needs had not increased since the entry of the 2011 judgment. Citing *Maier and Maier*, 137 Or App 15, 19, 902 P2d 1214 (1995), *rev den*, 322 Or 644 (1996), husband argues that the modified support award, therefore, impermissibly exceeded what was necessary—both in amount and in duration—to address the unanticipated change in circumstances.

Wife responds on several grounds that the court did not abuse its discretion by modifying the amount and duration of spousal support.[4] First, wife contends that husband's

---

[4] Wife precedes her response on the merits with a contention that husband's arguments are unpreserved, because he did not object to the trial court's

argument relies on a false premise, namely, that she lost only $5,000 per month in work-related earnings. Wife argues that, because the 2011 judgment anticipated that she would earn "at least" $5,000 per month, the court did not abuse its discretion in adjusting her support by more than that amount. Next, wife asserts that, because the evidence showed that wife's mental illness was debilitating and ongoing, there was a sufficient nexus between that change in circumstances and the court's decision to make the support award indefinite. Finally, wife argues that, in any event, once an unanticipated change in circumstances has been established, the resulting award is governed by the "broad range of issues" under ORS 107.105(1)(d)(C), with the ultimate objective being an award that is just and equitable under the circumstances.

We review the amount and duration of a modified spousal support award for an abuse of discretion. *Bailey and Bailey*, 248 Or App 271, 275-76, 273 P3d 263 (2012). A modification of spousal support must be based on a substantial and unanticipated change in the circumstances underlying the original award. ORS 107.135; *Polette and Polette*, 99 Or App 327, 330, 781 P2d 1253 (1989), *rev den*, 309 Or 291 (1990). A significant deterioration in health may constitute a qualifying change in circumstances. *Polette*, 99 Or App at 330. Husband does not dispute on appeal that wife has experienced a significant deterioration in her mental health, nor does either party appear to dispute that the modification should reflect that specific substantial and unanticipated change in circumstances. The parties disagree, however, as to whether the modified award adequately reflects that change or, instead, constitutes an abuse of discretion.

A court's primary objective in modifying spousal support is to restore the relative, post-judgment positions of

---

post-trial report. Wife is mistaken; husband submitted written objections, in which he argued that there was no "connection" between the change found and the decision to increase and extend spousal support in the manner ordered. Although husband's objections were perhaps imprecise, we are satisfied that he preserved the arguments that he now makes on appeal. *See State v. Irons*, 162 Or App 512, 520, 987 P2d 547 (1999), *rev den*, 330 Or 120 (2000) (preservation does not require "arithmetic precision"; the purpose of preservation rules is to ensure that the tribunal and parties "are not taken by surprise, misled, or denied opportunities to meet an argument" (internal quotation marks omitted)).

the parties after a change in circumstances has altered that relationship. *Paresi and Paresi*, 234 Or App 426, 433, 228 P3d 642, *rev den*, 348 Or 523 (2010); *Bock and Bock*, 171 Or App 458, 463, 15 P3d 609 (2000). Thus, as a general rule, a court should increase or decrease spousal support only to the degree necessary to enable the parties to adjust to the new circumstances. *Thomas and Thomas*, 181 Or App 128, 134, 45 P3d 954 (2002). As the trial court correctly observed in this case, modification proceedings are not a mechanism to relitigate the original support award. *See Maier*, 137 Or App at 19. Moreover, because a court is not to revisit the merits of the initial award when considering a modification, the resulting award should, to the extent possible, fulfill the purpose of the original award. *Bates and Bates*, 303 Or 40, 45 n 3, 733 P2d 1363 (1987).

We note, however, that, even though the court's objective in fashioning a modification is to maintain the parties' relative positions, the overriding concern remains what is just and equitable under the totality of the circumstances. *Harp and Harp*, 214 Or App 520, 524, 167 P3d 457 (2007). In determining what is just and equitable, a court must consider the various factors listed in ORS 107.105(1)(d)(C), most of which the court expressly referenced here, 287 Or App at 61-62. And, of particular relevance here, that provision also directs the court to consider "[a]ny other factors the court deems just and equitable."

With the foregoing principles and factors in mind, we return to the merits of husband's cross-appeal and ultimately conclude that the trial court did not abuse its discretion, either by increasing wife's support in the amount that it did, or by making the award indefinite.

We begin with husband's argument that the trial court erred in increasing spousal support by $10,000 per month, substantially more than was necessary to offset the change in circumstances that warranted the modification. In husband's view, because the only change in circumstances that the court found was that wife could no longer earn $60,000 per year through employment, the court abused its discretion by increasing wife's support by more than the monthly equivalent of $5,000.

As wife points out, however, husband's contention relies on a flawed premise, if not precisely the flawed premise that wife articulates. The trial court did not, as husband asserts, find that the only change in circumstances was that wife could no longer return to work. The court's finding regarding wife's ability to work was part of a larger determination regarding wife's mental health: Where, previously, "neither mental nor physical problems would preclude [wife's] employment," now, wife was mentally ill, she had suffered "a dramatic downward spiral into deep depression and impaired thinking, which negatively affected her health," her condition was prolonged and invasive, and, as a result, she could no longer work. Moreover, although the court's express finding was that wife's inability to work reduced her expected annual income by $60,000, there was evidence in the record to support the implicit finding that wife had substantially depleted—and would, as a result of her condition, further deplete—the resources that the trial court initially found would enable wife to generate investment income. *See Tilson and Tilson*, 260 Or App 427, 431, 317 P3d 391 (2013) ("We review the trial court's implicit and explicit findings of historical fact regarding the parties' economic circumstances to determine whether those findings are supported by any evidence in the record."); *Berg and Berg*, 250 Or App 1, 279 P3d 286 (2012) (where evidence in the record would have supported a finding that husband would work only five more years, trial court did not abuse its discretion in limiting support to five years under circumstances that would typically warrant an award of longer duration). That additional change in circumstance warranted further adjustment in wife's monthly support. *See Thomas*, 181 Or App at 134 (in modifying a support award, the court must consider what amount is necessary to adjust to any unanticipated circumstances that the court has found).

In light of the dramatic changes in wife's mental health and their consequences for her income, the trial court did not abuse its discretion in awarding maintenance support in the amount of $17,000 per month, the amount of wife's reasonable and necessary expenses. That is, because the award appears to have maintained the relative positions of the parties and addresses the specific changes in

circumstances that the court implicitly or explicitly found, the increase in monthly support was one that was well within the court's authority to order. *See Bates*, 303 Or App at 44; *Thomas*, 181 Or App at 134.

We likewise reject husband's second argument, that the trial court abused its discretion in awarding indefinite support. We note that, despite a careful review of the record in this case, we have been unable to glean the trial court's initial rationale for terminating all spousal support as wife approached retirement age and as her projected employment income would tend to diminish. Given, however, that the first court ordered that all maintenance support end after seven years, it appears that the court expected wife to become self-sufficient at that time. Further, because the trial court in the modification proceeding expressly found that wife's reasonable and necessary expenses remained $17,000 per month, and nothing in the record suggested that her needs would decrease by the time support was scheduled to terminate in 2018, the denial of all support after that time would leave her unable to meet her needs. In other words, she would not be self-sufficient, as the first court evidently envisioned.

Under those circumstances, the court did not abuse its discretion. The trial court expressly considered the relevant criteria listed in ORS 107.105(1)(d)(C). Husband does not contend that those criteria are not applicable in modification proceedings, nor does he dispute, as a general proposition, wife's contention that a court's overriding obligation in such proceedings is to order support in an amount that is just and equitable under all of the circumstances. Instead, as noted above, husband contends that our decision in *Maier*, 137 Or App at 19, compels us to reverse the award of indefinite support in this case. We disagree.

In *Maier*, on *de novo* review, we determined that the delay in the wife's ability to obtain additional job training, based, in part, on her need to care for the parties' children and her resulting delay in obtaining full-time employment, amounted to a substantial and unanticipated change in circumstances. *Id.* We concluded, however, that the evidence did not justify the amount or duration of the trial court's

modification of spousal support from a limited-duration award of $700 monthly to an indefinite award of $2,000 per month, because "there [wa]s no evidence that the change in circumstances eliminated wife's prospects for full-time employment." *Id.* Here, in marked contrast, the trial court found that the change in circumstances was not merely a delay in wife's ability to reenter the work force; it was an "engulfing mental illness" that was "prolonged" and "invasive," and which resulted in wife no longer being employable—in fact, wife's ability to "earn any money * * * [was] extremely limited." Accordingly, *Maier* provides little guidance here.

Based upon the trial court's determination that wife had a debilitating mental health problem that, to all appearances, had little chance of improving, he could reasonably have found that her present need of $17,000 in support each month to meet her needs was also unlikely to change. Furthermore, the court could reasonably conclude that, in light of wife's evident inability to become self-sufficient, continuing husband's financial obligation was the best way to maintain the parties' relative financial positions in the face of wife's progressing mental illness, and that it would be just and equitable for husband to share the burden of wife's unexpectedly deteriorating health. The court did not abuse its discretion in awarding indefinite support.

Affirmed on appeal and cross-appeal.