Argued and submitted December 13, 2002, affirmed March 6, 2003

In the Matter of the Marriage of

Louise E. VANDENBERG,
*Appellant,*

*and*

John D. VANDENBERG,
*Respondent.*

DR91-05-244; A117550

64 P3d 1185

Mark Kramer argued the cause for appellant. With him on the briefs was Kramer & Associates.

Mark McCulloch argued the cause for respondent. With him on the brief was Powers, McCulloch & Bennett, LLP.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

In this proceeding for modification of a judgment of dissolution of marriage, ORS 107.135,[1] wife appeals the trial court's order denying her motion to make her award of spousal support indefinite rather than for 10 years. On *de novo* review, we find that wife has failed to meet her burden of proving a substantial and unanticipated change in circumstances. We therefore affirm.

We state the facts of this case mindful of the trial court's express and implied findings of credibility. *Tomos and Tomos*, 165 Or App 82, 87, 995 P2d 576 (2000). The trial court found husband to be an "extremely credible" witness. It also found wife's testimony credible due to its consistency with husband's testimony.[2]

The parties were married in 1979 and subsequently divorced in 1991. They entered into a settlement agreement at the time of the dissolution that was incorporated into the dissolution judgment. Pursuant to the parties' unambiguous agreement, the judgment provided for 10 years of spousal support. The yearly amount of support was to start at $38,500 in 1992 and gradually increase to $42,000 in 1996. In 1998, the support was to gradually decrease until 2000 and 2001, when it would be $37,000 per year. Under the agreement, the support was to end in December 2001. Neither the

---

[1] ORS 107.135(2) provides, in part:

"In a proceeding under this section to reconsider the spousal or child support provisions of the decree, the following provisions apply:

"(a) A substantial change in economic circumstances of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of support, except that an order of compensatory spousal support may only be modified upon a showing of an involuntary, extraordinary and unanticipated change in circumstances that reduces the earning capacity of the paying spouse."

[2] The trial court stated,

"This is one case where I found both parties to be extremely credible. * * * I guess I could say that before I heard [husband] testify, I wasn't sure how credible and how forthcoming [wife] was being. But he, [husband], even thought she was testifying to the best of her ability today and in some fashion indicated that she seemed to be pretty much what he expected and what he had known her to be ten years ago."

agreement nor the judgment recites the reason for the fluctuations in support. Because the judgment was entered pursuant to an agreement by the parties, there was no hearing regarding the dissolution. After the dissolution, a stipulated order was entered under which the parties agreed to continue support at $42,000 rather than having it decrease as originally contemplated.

During the first several years of the marriage, wife had several jobs that were clerical in nature. At one point, she was employed at husband's law firm doing clerical type of work. However, she had difficulty relating to some of the partners at the firm and stopped working there after less than a year. Once the parties moved to Oregon, wife did not work outside the home. The parties had no financial need for wife to work, and, according to husband, she would have been unable to work because of her mental health condition.

Wife suffered from mental health problems before and during the marriage, as well as following the dissolution. As early as her high school years, wife suffered from depression. She underwent mental health counseling during the marriage and attempted suicide in 1986. As a result of the suicide attempt, wife was hospitalized for nine days and, during part of that time, she was held in restraints. During the marriage, wife also had a drinking problem. She was involved in an accident after driving while intoxicated and, as a result, had her driver's license suspended.

At the hearing, husband described wife's behavior during the marriage. He said that she was angry, drank a lot, had very low self-esteem, and would often stay in bed all day. According to husband, wife was also very socially isolated and had difficulty interacting with people. Immediately before the divorce in 1991, she was diagnosed as having long-term depression. Several months after the divorce, wife again attempted suicide.

Near the time of the divorce, wife began seeing Dr. Milan Sosnovec, a psychiatrist. At that time, he gave her a score of 30-40 on the "global assessment of functioning" (GAF) scale. The scores on the scale range can be as high as 100, with higher numbers indicating better mental health.

Sosnovec initially diagnosed wife as having a "severe depressive disorder." That diagnosis was based on both wife's history and the examination that he conducted.

In 1995, wife developed a severe case of psoriasis. As a result of the condition, she became more socially isolated, and, according to Sosnovec, the condition had adverse effects on her psychological condition. Wife explained; "I couldn't work. I couldn't walk. I had blotches all over me. I look disgusting. * * * I was like a leper. I felt like a leper would feel, I think." The skin condition cleared up after a period of several months and has not recurred since that time.

After the divorce and up until the time of the modification proceeding in January 2002, wife's condition "waxe[d] and wane[d]," according to Sosnovec. She consistently suffered from low self-esteem. She continued to be socially isolated after her skin condition improved. Furthermore, wife had a series of unfortunate romantic relationships after the divorce and, as a result, she no longer enters into those types of relationships. According to Dr. James Boehnlein, a psychiatrist and witness called by husband, she has made some improvement in her interpersonal relationships due to that decision. Boehnlein testified, based on the medical records and the totality of the circumstances, that there have been "ups and downs" in wife's condition, but "there has not been significant deterioration." Also, there is evidence that her relationship with her family has improved and she no longer drinks alcoholic beverages. Nonetheless, in December 2000, her GAF Scale score was 40, a score similar to the one assigned by Sosnovec around the time of the divorce.

In 1999, wife had a manic episode and was hospitalized at Oregon Health Sciences University. As a result of that episode, Sosnovec diagnosed wife as having a bipolar disorder. However, he testified at the modification hearing that she is no longer manic and that the bipolar disorder is, perhaps, in remission.

For several years following the divorce, wife operated a business buying and selling antiques. Her tax returns showed net losses for every year. After approximately three years, wife discontinued her business. Wife was not

employed in any other way after the divorce. According to Sosnovec, wife was unable to work at the time of the modification hearing. Finally, husband testified that, at the time he negotiated the settlement agreement in 1991, he thought that it was highly unlikely that wife would be able to work in the future and thus, earn an income and support herself financially. He explained,

> "I wanted to make sure that I did at least—you know, gave her at least as much and at least as long as the case law would suggest, and I felt that ten years would certainly satisfy that criteri[on].

> "I didn't want to be paying her for the rest of my life. I wanted to—well, I'm sorry.

> "Another factor was I considered that we had lived together for about ten years and, you know, whether there was logic to it or not, that that was a number that marked the number of years we were actually living together married.

> "And I felt, you know, that in many respects I had been supporting her for ten years. I would be supporting her for twenty years, and then I thought that—you know, from my thinking at the time was that her family would support her beyond that."

An award of spousal support may be modified if there has been a substantial and unanticipated change in circumstances since the entry of judgment. ORS 107.135. The burden of establishing the change in circumstances is on the party requesting the modification. *Thomas and Thomas*, 181 Or App 128, 131, 45 P3d 954 (2002). "A substantial deterioration in [mental] health may constitute changed circumstances, as could a failure to improve, if significant improvement was contemplated at the time of the original judgment." *Polette and Polette*, 99 Or App 327, 330, 781 P2d 1253 (1989), *rev den*, 309 Or 291 (1990); *Barron and Barron*, 85 Or App 278, 281, 736 P2d 583 (1987).

We are not persuaded by the above record that there has been a substantial deterioration in wife's mental health since the last order of support. At the time of the dissolution, she suffered from a serious mental illness that affected her

ability to work and function in society. At the time of modification, she continued to suffer from the same problems. Further, both at the time of the divorce and the time of modification, wife was thought to be unable to work because of her mental state. Although there have been fluctuations in the severity of her condition, overall the evidence at trial fails to establish that wife is in a worse condition than she was at the time of dissolution. We agree with the trial court's statement in this case that wife's mental illness "manifested itself in ways before the divorce that were essentially the same as some of the manifestations that occurred after the divorce."

■ Wife argues that, at the time of dissolution, it was contemplated that she would be able to support herself by the time husband's spousal support obligation ended. Thus, she contends that her failure to improve constitutes a substantial change in circumstances. The weight of the evidence in the record does not support her argument. Husband testified at length as to his considerations when negotiating the spousal support agreement, and the trial court found his testimony credible, a finding to which we defer. Husband testified that he did not expect wife to become able to support herself in the future and that the duration and amount of support provided for in the agreement was not based on such an expectation. Sosnovec's testimony confirms wife's lack of employability at the time of the divorce and the lack of change in that status. Because wife has failed to show that a significant improvement in her condition was anticipated at the time of the dissolution, her failure to improve does not constitute a change in circumstances to support modification of the judgment. *See Polette,* 99 Or App at 330-31; *Barron,* 85 Or App at 281.

Wife also argues that husband has the financial capacity to continue to pay spousal support and that she will become dependent on public services for her maintenance if support is terminated. However, our and the trial court's authority to extend spousal support is circumscribed by ORS 107.135. *See Grayson and Grayson,* 222 Or 507, 513, 352 P2d 738 (1960) (domestic relations court enjoys no power except that expressly conferred on it by statute); *Edwards and Edwards,* 124 Or App 646, 649, 863 P2d 513 (1993), *adh'd to as modified on recons,* 127 Or App 489, 873 P2d 401 (1994) (court's authority to modify dissolution judgment rests on the

statute). Without a substantial change in circumstances, we have no authority to extend husband's obligation. For the reasons stated above, the trial court correctly denied wife's motion to modify spousal support.

Affirmed.