414

Submitted June 24, 2019, reversed and remanded September 10, 2020

In the Matter of the Marriage of

Jack Allen MINCKLER,
*Petitioner-Respondent,*
*and*

Marlene Ellen Miler MINCKLER,
*Respondent-Appellant.*

Multnomah County Circuit Court
070261804; A167261

474 P3d 425

In this domestic relations case, wife appeals a supplemental judgment terminating husband's obligation to pay $2,000 monthly, indefinitely, in maintenance support. Among the issues raised on appeal, wife contends that the trial court erred in finding a substantial change in economic circumstances after husband voluntarily retired. *Held*: The trial court erred in failing to consider husband's potential earning capacity in determining whether husband had a substantial change in economic circumstances that allowed for reconsideration of the spousal support award. Therefore, the trial court applied an incorrect legal standard in granting husband's motion to terminate.

Reversed and remanded.

Patrick W. Henry, Judge.

Mark T. McLeod and McLeod & McLeod Attorneys at Law filed the briefs for appellant.

Ronald A. Johnston and Johnston Family Law filed the brief for respondent.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

In this domestic relations case, wife appeals a supplemental judgment terminating husband's obligation to pay $2,000 monthly, indefinitely, in maintenance support. We conclude that the trial court applied an incorrect legal standard in granting husband's motion to terminate and, for that reason, reverse and remand.

Wife requests that we exercise our discretion to review *de novo*; however, she has not demonstrated that this is an "exceptional case" warranting such review. *See* ORS 19.415(3); ORAP 5.40(8)(c). In accordance with our standard of review, we recount the facts "consistently with the trial court's express and implied findings, supplemented with uncontroverted information from the record." *Tilson and Tilson*, 260 Or App 427, 428, 317 P3d 391 (2013) (internal citation and quotation marks omitted).

The parties divorced in 2009 after a 20-year marriage. The court awarded a "longer half" to wife in the division of the marital estate, which had a value upwards of $2 million. Husband was awarded the business property associated with his furniture-making business that had an estimated value of $897,928, and wife was awarded, among other assets, four properties with an approximate value of $871,826.

Wife requested $5,000 in indefinite spousal support and husband requested that he instead pay between $2,000 and $2,700 for seven to 10 years with a step-down at year three. The court opined that, given the shaky economy, $2,000 in spousal support "is not adequate perhaps, but it is all I can do." The court awarded wife $2,000 per month in indefinite maintenance spousal support based upon the length of the marriage, the disparity of earnings, and husband's income from his furniture-making business, which the court anticipated would range between $70,000 and $80,000 per year given the fragile state of the economy. Wife was not working at the time of the dissolution, thus, the court found that it "[anticipated] that [wife] will receive income from her investments, including the real property and some form of employment." Notwithstanding its expectation that wife's income would increase, the court explained

that it anticipated that the parties' incomes would remain disparate, and the purpose of the award was to account for the disparity in incomes, something the court wished to be reminded of in the event of a motion to modify the spousal support award.

In 2016, husband moved to modify or terminate the spousal support award. Husband did so on the asserted grounds that his business income had "dropped dramatically," and that he planned to retire that fall at the age of 61, which would mean that he would no longer have any business income. Wife responded to husband's motion to modify support with a request to increase spousal support based upon her deteriorating health and impaired ability to work.

The court heard the motion the following year. By that time, husband had closed his furniture-making business and sold the building for $850,000. He then executed a 1031 exchange and reinvested $650,000 of the proceeds to purchase a retirement home in Napa Valley. He saved the remaining proceeds for living expenses and projected remodeling on the home. Husband planned on converting the duplex into a single-dwelling family home to live in with his mother and girlfriend. He did not seek other employment, considered himself retired, and spent his time working as his own contractor renovating the home. He received $1,540 monthly in Social Security benefits.

In November and December 2017, the trial court held an evidentiary hearing on husband's motion where it heard testimony from the parties and received exhibits. Husband argued that he had no ability to pay spousal support because he was living off his Social Security and had less assets than during the dissolution in 2009. Also, he argued that the court should not require him to pay spousal support by redividing assets from the marriage or the proceeds from the sale of a beach home that he had inherited after the dissolution. Additionally, he argued that wife was eligible to claim Social Security benefits that would provide her three times his income of $1,540. Finally, he argued that wife should be imputed $1,600 in rental income rather than $600—the actual amount she was entitled to receive even though one of her tenants had been in default for six months.

Husband did not contest that wife had additional expenses, declining health, inability to work, or actual reduction in rental income. Rather, husband's argument was based solely on his alleged inability to pay spousal support given his reduction in income.

Wife argued that husband's problems with his business were not unanticipated. She argued that all the problems his business faced in 2017 were discussed in 2009, and the original trial judge had considered those things in setting its award. Also, wife argued that husband was not forced to close his business but did it voluntarily as there was evidence that he could have rented his business building for an amount equivalent to his annual business income. Further, wife argued that husband has many employable skills including home building, subcontracting, and running a business—though husband testified that he had no other employable skills beyond high-end furniture making.

The following colloquy between wife's counsel and the court then followed:

"THE COURT:   When's he get to—When does he get to retire?

"[WIFE'S COUNSEL]:   Well—

"THE COURT:   Is there a case you can point me to that I could direct somebody who's capable—He could, perhaps, be able to work into his eighties. Does that mean I have—And, if he did—

"[WIFE'S COUNSEL]:   Well—

"THE COURT:   —be able to continue to pay the court ordered support?

"[WIFE'S   COUNSEL]: Judge—sure—Well,   Judge Kurshner was certainly aware that we were within ten years of retirement, and didn't decide that, 'Well, I'm just going to make this a ten-year obligation.' She said indefinite, because she knows he has the skills to run a business that probably wouldn't require full time work on it. Meanwhile, the house he testified he's working on now. Which, by the way, he says he got in over his head on. It sounds like it's a full-time job doing the very thing he could be doing, making a living. * * *

"So—And I understand—That's a good question. When will anyone retire? That's a question in any—any spousal support case. But the law doesn't say that, in and of itself, is the reason you can terminate an award.

"He's still below traditional retirement age by three years. The ordinary circumstance for someone who's able bodied, like him, like he testified he was, would then pursue that cause at that time. The voluntary decision to retire sooner is not right for this motion. It just isn't. There is no compelling evidence that that is the basis, that that was an involuntary change in circumstances, that what he was doing was unantici—unanticipated."

The trial court ruled from the bench that spousal support should be terminated in view of husband's closure of his business and retirement.

"[T]here has been a substantial change in circumstances since the initial award and the closing of [husband's] business, that * * * was a substantial and unanticipated change. Having that business close has significantly impacted the, what was at the time, significant disparity in the couple's income.

"I find that his income currently is $1,540 per month. I'm not aware of any authority that would permit me to—even if I were in a mind to do this—to direct him not to retire and to continue working when he is prepared and ready to retire.

"The overall—When you look at the overall percentage of the parties' income and their cash flow between the time of the divorce and today, they have roughly economic equivalent. I know there's a temporary downturn in [wife's] income, but I think that that can be addressed in the near term.

"And I find that the amount of support in this case, that is just and equitable, is just to terminate the support. And the purpose of the support award, to deal with the disparity in the incomes of the parties, has been met."

In the supplemental judgment, the trial court found:

"1.   There has been a substantial unanticipated change in circumstances since the last judgment regarding spousal support.

"2.    [Husband's] former income of $70,000 to $80,000 is no longer available to him due to the closing of DFI (his business).

"3.    As a result, the disparity in income existing between the parties at the time of the divorce no longer exists.

"4.    Each party has approximately equivalent income and cash flow at this time.

"5.    [Husband's] income is $1,520 per month. [Wife's] income from her rental properties while temporarily less, is typically $1,600 per month.

"6.    The court is aware of no authority that allows it to order [Husband] to continue working after his retirement or which states an appropriate retirement age.

"7.    The court finds that the appropriate amount of support under the circumstances is to terminate spousal support."

Wife appealed. She argues that the trial court erred in a number of respects, including (1) by failing to consider husband's income-earning capacity where husband voluntarily chose to retire early; and (2) by failing to determine whether husband's retirement was in good faith, as required under ORS 107.135(4)(b). Husband argues that the court correctly terminated spousal support, in view of his retirement and the effect that had on his income. He acknowledges that the court did not expressly address whether his retirement was in good faith, but asserts that it implicitly made that finding. As for whether the court should have considered husband's earning capacity, husband contends that the court properly recognized that there is no authority for the proposition that a court could order husband to work.

"Modification of a spousal support award is proper if (1) the original purpose of the award has been fulfilled, or (2) subsequent changes have substantially affected one party's ability to pay or the other party's need for support." *Harless and Harless*, 276 Or App 49, 53, 366 P3d 403 (2016) (*citing Beebe and Beebe*, 244 Or App 44, 48, 260 P3d 601 (2011)). ORS 107.105(1)(d)(C) provides a nonexclusive list of factors that the court considers in establishing a just and

equitable support award for spousal maintenance, which includes relative income and earning capacities, training and employment skills, and financial needs and resources. These factors not only govern a trial court's initial determination of an appropriate spousal support award, they also govern the trial court's assessment of a proposed modification of an award when there has been a substantial unanticipated change in a party's economic circumstances. *Gibson and Gibson*, 217 Or App 12, 21-22, 174 P3d 1066 (2007). A court's "ultimate duty is to do what is just and equitable under the totality of the circumstances." *Id*. at 21.

Whether there has been a substantial change in economic circumstances of a party sufficient to warrant reconsideration of an award of spousal support under ORS 107.135(3)(a) presents a mixed question of fact and law. *Tilson*, 260 Or App at 431. We review the trial court's implicit and explicit findings of historical fact regarding the parties' economic circumstances to determine whether those findings are supported by any evidence in the record. *Id*. Further, we review the trial court's determination that those facts constitute a "substantial change in economic circumstances of a party" under ORS 107.135(3)(a) for legal error." *Id*. at 431-32. If the court finds that there has been a substantial change to the parties' economic circumstances, then the court must determine what is just and equitable given the totality of the circumstances. *Id*. at 432. We review "the trial court's ultimate determination about a 'just and equitable' amount of support for abuse of discretion." *Id*.

In this case, on the record before it, the trial court permissibly concluded that husband's voluntary early retirement and dismantling of his business was the sort of unanticipated change in economic circumstances that could allow for the modification of the support award. At the time of dissolution, the court stated that it anticipated that husband would keep operating the business, allowing for the finding that its closure was unanticipated. And, the record supports the court's finding that, as a result of that closure, husband's actual monthly income as of the time of the modification hearing was less than it was at dissolution. But that determination—that there was an unanticipated change in

husband's economic circumstances—"does not, by itself, win the day." *Wilson and Wilson*, 186 Or App 515, 522, 63 P3d 1244 (2003).

Rather, to win the day, husband was required to demonstrate in addition that the change was a substantial one in husband's overall economic circumstances and that, if it was, the termination or modification of spousal support was just and equitable. *Id*. at 522-26; *Tilson*, 260 Or App at 431. On that score, the trial court erred when it declined to take husband's earning capacity into account based on its view that there was no authority to order husband to continue to work. ORS 107.135(4)(a)(A) states that "[t]he court *** shall consider income opportunities and benefits of the respective parties from all sources, including but not limited to: *** [t]he reasonable opportunity of each party, the obligor and obligee, respectively, to acquire future income and assets." True, a court may not be able to order a retired person to return to work. That does not mean, however, that when a person retires early that a court may disregard the person's earning capacity when evaluating a motion to modify or terminate spousal support.

We addressed the point in *Wilson*. 186 Or App at 523-26. There, after synthesizing our case law on the point, we explained that, in determining whether a voluntary early retirement resulted in a sufficient change in economic circumstances so as to allow for modification of spousal support, it is appropriate to take into account the retiree's earning capacity. *Id.* at 523, 525-26. Specifically, we concluded that, when an early retirement results from a voluntary decision, rather than circumstances beyond the retiree's control, then it is appropriate to take into account the retiree's earning capacity, both for the purpose of assessing whether a voluntary retirement resulted in a sufficient enough change in economic circumstances to allow for modification of spousal support, and for the purpose of determining the amount of any such award. *Id.* at 523-26.

Here, as noted, due to its conclusion that it could not order husband to work, the trial court did not take into account husband's earning capacity in determining whether there had been a substantial enough change in the parties'

economic circumstances to allow for a modification and did not take it into account in determining that termination of the award was just and equitable under the circumstances. We therefore reverse and remand for it to do so. This disposition obviates the need to resolve the parties' dispute as to whether the court made the "good faith" determination that both parties agree was required by ORS 107.135(4)(c) and (d).[1] On remand the court can make that finding in the first instance if it did not make it before or clarify that it already made that finding.[2]

Reversed and remanded.

---

[1] ORS 107.135(4)(c) provides that, in a motion to modify or end spousal support, "the court shall not find a change in circumstances sufficient for reconsideration of support provisions" when the change results from "the obligor's voluntary retirement" or partial voluntary retirement, or other voluntary reduction in income, if those voluntary actions were not taken in "good faith." ORS 107.135(4)(d) outlines the factors for a court to consider in assessing whether a voluntary retirement or reduction in income was taken in good faith for purposes of the statute, including a consideration of what other assets were available to pay spousal support as well as whether the obligor dissipated substantial assets at or close to the time that the obligor filed for a modification.

[2] The parties also appear to dispute whether the court, in terminating spousal support, terminated support based on its determination that husband's retirement eliminated the disparity in income that spousal support initially was intended to address or if the court, instead, determined that termination of spousal support was just and equitable under the circumstances. As we noted in *Gibson*, the latter determination must be made: "However, a cautionary tale is warranted. Maintaining the parties' positions relative to each other is where the analysis begins, but our ultimate duty is to what is just and equitable under the totality of the circumstances." 217 Or App at 21. On remand, the court can clarify the basis for its decision and conduct any omitted analysis on that point, taking into account the competing equitable considerations identified by the parties, as well as the broad inquiry into the parties' sources of actual and potential income contemplated by ORS 107.135. *Albrich and Albrich*, 162 Or App 30, 35, 987 P2d 542 (1999) (interpreting "all sources" in ORS 107.135(3)(a) to "plainly imply[] no limits." That is, "the breadth of the court's *consideration* of the parties' income is without limits." (Emphasis in original.)).