Argued and submitted March 8; reversed and remanded as to denial of father's motion to terminate spousal support and modify child support, otherwise affirmed November 24, 2021

In the Matter of the Marriage of

Brianne Marie WILLIAMS,
*Petitioner-Respondent,*
*and*

Derek Alexander WILLIAMS,
*Respondent-Appellant.*

Deschutes County Circuit Court
17DR22064; A172022

504 P3d 635

Father moved to terminate spousal support and modify child support based on a substantial change in economic circumstances related to the failure of his business. The modification court denied the motion. Framing the issue as whether the business's demise "could have been anticipated at the time of judgment," the modification court concluded that father should have had a better understanding of the business's finances at the time of dissolution, when the dissolution court awarded him mother's one-third share of the business in addition to his own existing one-third share. Father appeals the resulting supplemental judgment. He argues that the modification court misapplied the "change in economic circumstances" standard and thus erred in denying his motion. *Held*: The modification court erred in denying the motion on the grounds that it did. The proper point in time against which to assess whether a change in economic circumstances had occurred was the date of the dissolution trial, not the date of entry of the dissolution judgment. Further, the dissolution court plainly did not anticipate the demise of the business in setting support, the parties did not actually anticipate the demise of the business at the time of the dissolution trial, and there is no evidence that the business's situation at the time of the dissolution trial was so dire that its demise was inevitable.

Reversed and remanded as to denial of father's motion to terminate spousal support and modify child support; otherwise affirmed.

Raymond D. Crutchley, Judge.

Michael J. Fearl argued the cause for appellant. On the opening brief was Sonia Huntsman Ickes. On the reply brief were Robert William Ickes and Sonia Huntsman Ickes.

Shayna M. Rogers argued the cause for respondent. Also on the brief were Tammy M. Dentinger and Garrett Hemann Robertson PC.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Reversed and remanded as to denial of father's motion to terminate spousal support and modify child support; otherwise affirmed.

**AOYAGI, J.**

Father appeals two supplemental judgments regarding spousal support, child support, and parenting time. In his first assignment of error, he challenges the trial court's determination that no substantial change in economic circumstances has occurred, which was the basis for denying father's request to terminate spousal support and modify child support. For the reasons explained below, we agree with father that the trial court erred in that regard, and we reverse and remand for further proceedings. In his second, third, and fourth assignments of error, father challenges several aspects of the trial court's decision on parenting time; we reject those assignments without written discussion.

## I.   STANDARD OF REVIEW

"Whether there has been a 'substantial change in economic circumstances of a party' sufficient to warrant reconsideration of an award of spousal support under ORS 107.135(3)(a) presents a mixed question of fact and law." *Tilson and Tilson*, 260 Or App 427, 431, 317 P3d 391 (2013) (quoting ORS 107.135(3)(a)). "We review the trial court's implicit and explicit findings of historical fact regarding the parties' economic circumstances to determine whether those findings are supported by any evidence in the record." *Id*. Whether those facts establish a substantial change under ORS 107.135(3)(a) is a legal question that we review for legal error. *Id*. at 431-32.

## II.   FACTS

Father and mother were married from 2013 to 2018. They have one child, G, who was born in 2017.

Under the terms of the dissolution judgment, father must pay mother $1,500 per month in spousal support for three years and $901 per month in child support. The trial court calculated those amounts based on father having monthly income of $8,900 per month—specifically, $6,400 from a business called That's My Gig (TMG) and $2,500 from father's band—and mother having the capacity to earn $2,600 per month.

The business, TMG, was primarily a web-based platform that connected people looking to hire musicians with musicians looking for work. During the marriage, father, mother, and mother's brother owned and operated TMG together, with mother serving as the bookkeeper and father handling the "talent" side of the business. For purposes of the dissolution trial in August 2018, the parties jointly hired an expert to value TMG, and the dissolution court ultimately awarded mother's one-third share of TMG to father (giving him two-thirds ownership), with an equalizing judgment to mother. As noted, at that time, the trial court found from the evidence that father could expect to earn $6,400 per month from TMG, as relevant to setting support amounts.

Because the timing proves relevant, we note that the dissolution trial was held on August 2 and 3, 2018; that the trial court made its findings and decision on the record on August 3, 2018, and directed mother to prepare the judgment; and that the dissolution judgment was entered on the case register on October 29, 2018.

On December 12, 2018—four months after trial and six weeks after entry of judgment—father moved to terminate spousal support and to modify child support. Father claimed a substantial change in his economic circumstances, caused by TMG's demise and a corresponding loss of income. At the modification trial, father testified that mother had been responsible for TMG's finances and that he lacked a "clear financial picture of what was going on with the business" until the fall of 2018, when he obtained the books by legal process and hired an independent bookkeeper. Father learned that subscription declines that began in January 2018 were continuing on a "slope," with TMG losing "a ton of subscribers" in June. Father understood (although mother disagreed) that part of the reason for the subscriber losses related to a new federal law requiring credit card companies to issue "chip" cards to existing cardholders, which led to subscriptions being cancelled when non-chip cards on file for payment were cancelled. Father tried to get lapsed subscribers to resubscribe but had little success. He also had little success getting new subscribers, despite increased advertising

in August and September. The independent bookkeeper testified that his review of TMG's books revealed that revenue had started to dwindle "partway through 2018" and that the business "really took a hit" from "August 2018 on."

With a shortage of capital to keep the business going, father decided to shut down TMG around December 2018. He paid off creditors to the extent that he could, and the company was dissolved in January 2019.[1]

Without income from TMG, father earns only $2,500 per month, according to the trial court's findings at dissolution, or $3,100 per month if one includes new income from guitar lessons, according to evidence at the modification trial. Father is obligated to pay $2,401 to mother for spousal and child support.

The trial court denied father's request to modify support. Framing the question as whether a substantial change in circumstances had occurred that "could not have been anticipated at the time of judgment," the court concluded that there was no change in circumstances because father "should have known" that TMG was losing subscribers, his "failure to recognize or become aware of the loss of subscribers" was "not excusable," and "the loss of [TMG] subscribers which led to the dissolution of [TMG] d[id] not constitute a substantial and unanticipated change in circumstances."

## III.   ANALYSIS

A court may reconsider spousal or child support provisions in a dissolution judgment when there has been a "substantial change in economic circumstances of a party." ORS 107.135(3)(a). The change must be "unanticipated" to permit support modification. *Patterson and Patterson*, 293 Or App 8, 12, 427 P3d 228 (2018) (requiring "a substantial, unanticipated change in economic circumstances"); *Luty and Luty*, 245 Or App 393, 399-400, 263 P3d 1067 (2011) (similar); *Nieth and Nieth*, 199 Or App 330, 334, 111 P3d 746,

---

[1] Based on statements that it made, the trial court appears to have credited father's and the independent accountant's testimony regarding TMG's subscriber trends in 2018 and the financial reason for shutting down the business. In mother's view, there was "nothing unusual" about TMG's subscriber situation from January to August 2018, and she and her brother both viewed TMG as "salvageable" and "viable" at all times.

*adh'd to as clarified on recons*, 200 Or App 582, 116 P3d 234 (2005) (similar). "The burden of establishing a change of circumstances is on the party requesting the change." *Thomas and Thomas*, 181 Or App 128, 131, 45 P3d 954 (2002).

A.  *Timing of a Change in Circumstances*

We first consider *when* a change in circumstances must occur, which is the initial point of contention between the parties. Father contends that the parties' economic circumstances must be evaluated relative to the dissolution trial (or the last modification proceeding), whereas mother contends that they must be evaluated relative to the date of entry of the last judgment. The trial court agreed with mother that an alleged change in circumstances is measured against the circumstances that existed on the date that the last judgment was entered.[2]

There is superficial support for using the date that the judgment was entered. On various occasions, we have referred to the date of judgment when stating the standard for a change in circumstances. For example, in *Vandenberg and Vandenberg*, 186 Or App 592, 597, 64 P3d 1185 (2003), we said, "An award of spousal support may be modified if there has been a substantial and unanticipated change in circumstances since the entry of judgment." It is unquestionably true that support may be modified based on a post-judgment change in circumstances. It does not follow, however, that support may *not* be modified based on a change that occurred after trial but before entry of judgment. *Vandenberg* did not address that issue, because it did not need to, as the alleged change in that case had occurred long after the entry of judgment. *See id.* at 594, 596 (modification proceeding took place over 10 years after entry of judgment). The same is true of other cases that contain similar statements referring to the judgment date. *See, e.g.*, *Luty*, 245 Or App at 399-400 (stating that the change "must have been unanticipated when the court entered the last relevant judgment in the dissolution proceeding," in case

---

[2] Mother contends that father did not preserve his argument that the time of trial is the relevant reference point for an alleged change in economic circumstances. We disagree. Father clearly stated his position in post-hearing briefing that was ordered by the court. The issue was adequately preserved.

where the change occurred nearly six years after the last proceeding); *Deboer and Deboer*, 212 Or App 436, 438, 157 P3d 1279, *rev den*, 343 Or 223 (2007) (similar, in case where modification was sought 10 years after the last proceeding); *Nieth*, 199 Or App at 334 (similar, in case where modification was sought four years after the last proceeding).

We agree with father that *Sills and Sills*, 63 Or App 157, 662 P2d 795, *rev den*, 295 Or 446 (1983), is the more apt precedent. In *Sills*, at the dissolution trial, the husband testified to his income from employment and stated that he expected to lose his job shortly. *Id.* at 159. Two weeks after trial, he lost his job. *Id.* Five weeks after trial, the court signed the dissolution judgment. *Id.* The husband then moved to eliminate spousal support and to reduce child support, which the court denied on the basis that the job loss had occurred before the judgment was signed. *Id.* We reversed. *Id.* We first explained that, even if the husband's job loss was "anticipated" at the time of trial, "it ought not have been considered in fixing his support obligations," because it remained "speculative" at that time. *Id.* at 160. We then considered the timing of the job loss, *i.e.*, after trial but before the judgment was signed: "The question is which date controls—the date of the dissolution trial or the date of the decree?" *Id.* We concluded "that on these facts the date of trial controls." *Id.* We then remanded to the trial court to decide the motion on its merits. *Id.*

It is true that our case law contains inconsistent phrasing regarding the point in time against which a change in circumstances is to be measured. We have variously referred to unanticipated changes since the prior "trial," *e.g.*, *Sills*, 63 Or App at 160, since the prior "judgment," *e.g.*, *Vandenberg*, 186 Or App at 597, since the prior "award," *e.g.*, *Boni and Boni*, 208 Or App 592, 596, 145 P3d 331 (2006), and "since the divorce," *e.g.*, *Reed v. Reed*, 12 Or App 371, 373, 507 P2d 55 (1973). That is explained by the fact that, usually, the difference does not matter, allowing room for some imprecision. It did matter in *Sills*, however, and, when it mattered, we held that the trial date controlled whether a change in economic circumstances had occurred. We later reiterated that holding in *Pickering and Pickering*, 100 Or App 47, 50, 784 P2d 130 (1989), stating, "A change of

circumstances that occurs after trial, but before the judgment is signed, is a proper subject of a motion to modify."[3]

We therefore agree with father that the trial court should have assessed whether father experienced a substantial change in economic circumstances since August 3, 2018—the date when the trial ended and the court announced its findings and decision—rather than requiring father to prove a substantial change in circumstances since October 29, 2018, when the dissolution judgment was entered in the register. Father could have moved to reopen the evidentiary record in October before judgment was entered, but, under the circumstances, there would have been little practical difference between doing that and moving to modify in December. Either way, father would be asking the court to take new evidence and reconsider the existing award based on that evidence. Without foreclosing the possibility of some circumstances in which it would be appropriate to focus on changes since the entry of judgment, there is nothing to distinguish this case from *Sills*, and, under *Sills*, the court should have assessed whether there had been a change in father's economic circumstances since August 3, 2018.

We reject without further discussion those arguments made by mother that depend on comparing the parties' circumstances at modification to their circumstances on October 29, 2018, rather than August 3, 2018.

B.    *The "Unanticipated" Nature of a Change in Circumstances*

The next question is whether father's total loss of TMG income—the primary basis for his motion to modify support—was "unanticipated" on August 3, 2018. Certainly, the dissolution court did not anticipate that father would receive no income from TMG in the future. To the contrary, it expressly anticipated that father would receive $6,400 of

---

[3] Mother cites a child-custody case, *Southworth and Southworth*, 113 Or App 607, 835 P2d 122, *rev den*, 314 Or 574 (1992), in arguing for a different result. In that case, we reversed a change-of-custody ruling that was based on a change in circumstances occasioned by the discovery of a certain photograph of the child, reasoning that the father was aware of the photograph before judgment was entered and had ample opportunity to bring it to the court's attention if he "thought that [it] was relevant to mother's capacity to care for their child." *Id.* at 614. Child custody modification raises different issues from monetary support, and we do not view *Southworth* as silently overruling *Sills*.

monthly income from TMG when it set the support amount. As for the parties, there is no evidence that mother anticipated TMG's demise, *see* 315 Or App at 802 n 1, and the modification court implicitly found that father did not *actually* anticipate it, which is amply supported by the record. Mother argues that father's total loss of TMG income nonetheless should be treated as "anticipated" because it was "ascertainable." Similarly, the court denied modification because father, as a one-third owner of TMG, "should have known" TMG's subscriber numbers and finances at all times. We understand the court's reasoning to be that father "should have" been more familiar with TMG's financials and figured out sooner that TMG was losing subscribers at an unsustainable rate.

The parties' arguments and the modification court's reasoning require us to examine what it means for a change to have been "unanticipated," an oft-cited requirement that originates in case law, rather than ORS 107.135 itself. It appears that we first used the term "unanticipated" in *Pratt and Pratt*, 29 Or App 115, 117, 562 P2d 984 (1977), wherein we said, "It is elementary that the party requesting the modification of an award of spousal support has the burden of demonstrating a change in circumstances, unanticipated at the time of the dissolution, in the one spouse's ability to pay and/or the other's need therefor." In *Pratt*, we concluded that an asserted change was "anticipated" in setting support and already reflected in the existing support judgment, such that it was not a basis for modification. *Id*. at 118. Of course, it makes perfect sense that, if the existing judgment already reflects the alleged change, because the prior court anticipated it and accounted for it, the change would not be "unanticipated," and its actual occurrence would not permit modification of the support award.

Most of our case law regarding the "unanticipated" requirement turns on whether the prior court anticipated a particular economic change that later occurred, such that it is already reflected in the existing support award and is not a proper basis for modification. For example, in *Garrison and Garrison*, 28 Or App 297, 299, 559 P2d 513 (1977), we said, "To justify a modification of the decree, there must be a change of circumstances of a nature or degree beyond what

was contemplated by the decree." In *Newton and Newton*, 122 Or App 52, 57, 857 P2d 171, *rev den*, 318 Or 25 (1993), we said that spousal support should not be modified where "[t]he parties' incomes and circumstances do not differ significantly from the circumstances that the trial court anticipated in setting the spousal support award." And, in *Varro and Varro*, 300 Or App 716, 737, 454 P3d 35 (2019), we said, "A party's income from employment is not an 'unanticipated' change in economic circumstances where a trial court anticipated such employment and income when making the award of spousal support."

For application of that principle, compare *Grage and Grage*, 109 Or App 311, 315-16, 819 P2d 322 (1991) (the wife's increased income "must have been contemplated by the parties and the court" at dissolution and therefore was not a basis for modification), and *Moak and Moak*, 64 Or App 487, 491-92, 668 P2d 1249 (1983) (the allegedly changed conditions were contemplated in the dissolution decree and therefore not a basis for modification), with *Luty*, 245 Or App at 400 (the husband's major loss of income, related to cocaine addiction, was unanticipated in setting support and therefore a proper basis for modification), and *Cowden and Cowden*, 172 Or App 343, 351, 18 P3d 479 (2001) (modification was available where the wife's "total income since dissolution ha[d] far exceeded what the court anticipated").

Conversely, the *nonoccurrence* of an event that was anticipated in setting support *is* a basis for modification. For example, in *Winnie and Winnie*, 109 Or App 304, 307, 818 P2d 1292 (1991), *rev den*, 312 Or 677 (1992), the dissolution court had anticipated in setting spousal support that the wife would earn more income once the parties' child began attending school, but, in fact, the child's "need for special care did not decrease as anticipated," which was "a substantial change from the circumstances anticipated at dissolution." *See also* ORS 107.135(3)(b) ("If the judgment provided for a termination or reduction of spousal support at a designated age in anticipation of the commencement of pension, Social Security or other entitlement payments, and if the obligee is unable to obtain the anticipated entitlement payments, that inability is sufficient change in circumstances for the court to reconsider its order of support.").

There are also situations in which a dissolution court is aware of the possibility of a future economic change but does not account for it in setting support due to it being speculative. In such situations, if the change does occur, it is treated as "unanticipated." For example, a court may know that one party is in poor health, which could deteriorate further in the future, affecting the party's income, but such a possibility is usually too uncertain to consider in setting support and is better addressed through modification if the person's health actually deteriorates. *See, e.g., Paresi and Paresi*, 234 Or App 426, 434, 228 P3d 642, *rev den*, 348 Or 523 (2010) (affirming modification where the wife's health problems "worsened to such an extent that we consider the resultant increase in medical expenses and decrease in income and earning capacity to have been unanticipated, that is, they were unforeseen at the time of the 2002 modification"); *Fellows and Fellows*, 124 Or App 476, 478, 862 P2d 1325 (1993) (reversing denial of modification where the "wife's condition unexpectedly became much more severe"); *Johnson and McKenzie*, 100 Or App 640, 643, 787 P2d 1306 (1990) (reversing denial of modification where the dissolution court had not anticipated that the wife's disability would prevent her from working full-time).

That is consistent with the well-established principle that a court may not set support based on an anticipated future change in the parties' income or expenses, *even if foreseeable*, when it remains speculative: "Even if a change in a party's economic circumstances due, for example, to prospective unemployment or retirement is foreseeable at the time a support order is entered, it cannot furnish the basis for a present order if it is speculative." *Wilson and Wilson*, 186 Or App 515, 522, 63 P3d 1244 (2003); *see also Chirrick and Chirrick*, 144 Or App 379, 384, 927 P2d 135 (1996) (denying modification based on "an anticipated decline in [the father's] income due to commercial fishing restrictions," but noting that he could request modification again "if *** the fishing restrictions do, in fact, result in a substantial reduction in his income in the future"); *Page and Page*, 103 Or App 431, 433, 797 P2d 408 (1990) ("The trial court was correct in refusing to speculate that the salary at the [husband's new job] would be lower. We also decline to

speculate."); *Koch and Koch*, 58 Or App 252, 256, 648 P2d 406 (1982) ("[S]pousal support is based on the needs of the requesting spouse demonstrated at trial and not on some speculative need based on future events.").

Nearly 100 years ago, the Supreme Court warned courts not to speculate about the future when setting support. In *Neil and Neil*, 112 Or 63, 65, 228 P 687 (1924), the Supreme Court held that it was "improper" to include in a child support award a provision increasing support in the event that the mother moved. The court explained: "The court should not attempt to anticipate the changing conditions and contingencies in awarding the custody of minors and providing for their maintenance. Decrees making such awards are always subject to modification, and it is impossible for a court to provide in advance for changes that may occur." *Id.*; *see also Picker v. Vollenhover*, 206 Or 45, 72, 290 P2d 789 (1955) (criticizing a support decree providing for future increases in child support tied to one party's earnings, which was "not only based on speculation as to future events" but "also based on the assumption that a change in one only of the many circumstances which may be relevant to the issue shall be conclusive").

A half century later, in *Nussmeier and Nussmeier*, 27 Or App 173, 175, 555 P2d 813 (1976), *rev den*, 277 Or 1 (1977), we similarly commented on the impropriety of speculating about future events when setting support—including as a means to try to avoid the need for modification proceedings—and recognized that modification exists precisely to address future changes, including foreseeable but speculative changes that may occur even "in the near future":

> "The trial court expressed its belief that, in order to prevent the parties from having to seek future modification of child support, it should consider in setting the amount of child support the possibility of an increase in the husband's income in the near future. Such a decision, we think, was speculative. ORS 107.135(1)(a), allowing modification of child support based on change of circumstances, is designed to meet future changes and is the procedure the legislature contemplated for future changes."

*See also Shlitter and Shlitter*, 188 Or App 277, 287-88, 71 P3d 154 (2003) (in setting child support, it was improper to

plan for the five-year step-down in spousal support, because it was impossible to predict what wife's total income would be in five years; the "proper time to reconsider husband's child support obligation" would be when his spousal support obligation actually changed); *Sills*, 63 Or App at 160 (evidence that the husband expected to lose his job shortly after trial "ought not have been considered in fixing his support obligations," as his job loss remained "speculative"); *but see Godwin and Godwin*, 30 Or App 425, 428-29, 567 P2d 144 (1977) (where the wife was pregnant at the time of the dissolution trial, the "birth and survival" of the unborn child was a sufficiently certain event to provide for it in the support award, subject to modification if "an unforeseen event occurs, such as the birth of twins or of a child requiring extraordinary medical care").

A recent case is illustrative. In *Minckler and Minckler*, 306 Or App 414, 417, 474 P3d 425 (2020), the husband moved for modification of spousal support based on his early retirement and the dismantling of his business, and the wife opposed, arguing, as relevant here, "that husband's problems with his business were not unanticipated," "that all the problems his business faced in 2017 were discussed in 2009," and that "the original trial judge had considered those things in setting its award." We affirmed the rejection of the wife's arguments, holding that "the trial court permissibly concluded that husband's voluntary early retirement and dismantling of his business was the sort of unanticipated change in economic circumstances that could allow for the modification of the support award." *Id.* at 420. Of particular relevance, we noted that, "[a]t the time of dissolution, the court stated that it anticipated that husband would keep operating the business, allowing for the finding that its closure was unanticipated." *Id.*

Having addressed situations in which the dissolution court was aware of a possible future change in the parties' economic circumstances and either did or did not account for it in setting support, we now turn to a potentially more difficult question: What standard applies when a party seeks modification of a support award based on an economic change that the dissolution court did *not* anticipate when setting support, but which the other party claims

the moving party *could have* anticipated and raised at dissolution, instead of moving for modification once it actually occurred?

Although most of our "unanticipated" case law turns on whether a change was *actually* anticipated, such that it is already reflected in the existing support judgment, some cases speak in terms of what "could have" been anticipated. The modification court used that language in framing the issue in this case, and wife also relies on that framing. An examination of our case law is therefore necessary to determine what it means that a change "could have been anticipated," as opposed to actually being anticipated.

A survey of the extensive body of case law regarding changes in economic circumstances, as relevant to support modification, reveals that our approach to the "unanticipated" analysis is essentially the same regardless of whether we describe the standard in terms of what was "anticipated" (or "unanticipated"), "expected" (or "unexpected"), "foreseeable" (or "unforeseeable"), or "could have been anticipated" (or "could not have been anticipated").

Frequently, even if we describe the standard in "could" terms, our analysis focuses on actual anticipation. *See, e.g.*, *Paresi*, 234 Or App at 433-35 (quoting "could not have anticipated" standard, but allowing modification based on what was actually anticipated when support was set); *Moak*, 64 Or App at 491-92 (quoting "could not have anticipated" standard, but denying modification because each asserted change was contemplated in the decree or, as to the aging of the children, was so foreseeable that it must have been contemplated in the decree[4]); *McDonnal and McDonnal*, 54 Or App 296, 302, 634 P2d 1357 (1981), *rev'd on other grounds*, 293 Or 772, 652 P2d 1247 (1982) (stating standard as "could not have reasonably been anticipated,"

---

[4] Certain types of changes are presumed to have been contemplated in the original decree, even if not expressly mentioned, and therefore are generally not a basis for modification. Such changes are sometimes described as "foreseeable." As aptly stated in *Delf and Delf*, 19 Or App 439, 441-42, 528 P2d 96 (1974), modification is not justified "each time a party receives a cost-of-living increase in income or the consumer index raises a point or the child ages by a year or month," because "[s]uch changes are within a range which are reasonably foreseeable at the time of the entry of the decree and must be considered to be contemplated by it."

but denying modification because the wife's health condition was "essentially unchanged" from dissolution and "it was never contemplated she would be gainfully employed"); *McLean and McLean*, 46 Or App 367, 369-71, 611 P2d 693 (1980) (quoting "could not have anticipated" standard, but allowing modification because the wife's income had "more than doubled from what was anticipated at the time of the decree"); *Hellweg v. Hellweg*, 30 Or App 995, 997-99, 568 P2d 710 (1977) (stating standard as "could not have reasonably been expected," but denying modification because the dissolution court had expected the wife to obtain employment).

There are also times where we say that a change "could have" been anticipated as a way of explaining the burden of proof. When the alleged change is of such a nature that the dissolution court (or prior modification court) "could have anticipated" it, the moving party bears the burden to prove that the court did not anticipate it and already account for it in the support award. *See, e.g.*, *McGinley and McGinley*, 172 Or App 717, 736-37, 19 P3d 954, *rev den*, 332 Or 305 (2001) (denying modification of child support based on a reduction in the child's college financial aid award, because the record of the prior support proceeding prevented us from concluding that the reduction was unanticipated); *Boyd and Boyd*, 152 Or App 785, 788-89, 954 P2d 1281 (1998) (denying modification based on a recent dip in the husband's income from his sporting goods store, because "upward and downward shifts in income are to be expected," and so the recent dip could not be "unanticipated," but recognizing that the husband could be entitled to modification in the future if his "business fortunes continue to decline to the point that they are no longer the economic ups and downs inherent in his type of business"); *Smith and Smith*, 103 Or App 614, 617 n 1, 798 P2d 717 (1990), *adh'd to as clarified on recons*, 108 Or App 335, 813 P2d 1137 (1991) (denying modification based on the wife's "substantial income" from property awarded to her in the dissolution and from investments made with cash awarded to her in the dissolution, because such income was "sufficiently foreseeable" at dissolution); *Harden and Harden*, 67 Or App 687, 690-91, 679 P2d 348, *rev den*, 297 Or 339 (1984) (denying modification because the husband

had "not shown that the trial court did not contemplate that [his] income would fluctuate with economic conditions").[5]

Perhaps the most relevant decision containing "could" phrasing is *Sugar and Sugar*, 212 Or App 465, 157 P3d 1263 (2007). In that case, the modification court determined that a substantial change in the wife's economic circumstances had occurred—including the wife having greater income, a new real property interest, and decreased expenses—and it terminated the maintenance portion of her spousal support as a result. *Id*. at 468. On appeal, the wife argued, as relevant here, that the increase in her income "could readily have been anticipated" at dissolution. *Id*. at 471. We disagreed. Relying on the dissolution court's letter opinion, we concluded that the court "did not anticipate" any substantial increase in wife's income when it awarded spousal support. *Id*. at 471-72. As for whether the dissolution court "could have" anticipated it, we concluded that none of the evidence before the court at dissolution put it on inquiry notice that the wife had greater earning potential than she was representing. *Id*. at 472. Further, the record did "not reveal any reason that the court should have anticipated that wife would gain an interest in a second piece of real property or decrease her monthly expenses." *Id*. We concluded that the husband had "demonstrated a substantial, unanticipated change in the parties' economic circumstances from the time of dissolution." *Id*.

The foregoing review of our case law makes clear that, when assessing whether a change alleged as a basis for modification was "unanticipated," our primary concern is whether the dissolution court (or prior modification court) actually anticipated it in setting support. If the court *did* anticipate it in setting support, then the actual occurrence of the anticipated change is generally not cause for modification. If the court *did not* anticipate it in setting support,

---

[5] "[T]emporary reductions in income and economic downturns in business do not ordinarily constitute changed circumstances." *Thomsen and Thomsen*, 167 Or App 218, 223, 225-26, 2 P3d 432 (2000) (internal citation omitted) (denying modification, where "some fluctuation in [the husband's] income could have been anticipated by the trial court in the dissolution proceeding" and the husband had not shown that either party's earning capacity was significantly different from what the dissolution court found).

then the change is generally an appropriate basis for modification, subject to the other requirements for modification. If it is *unclear* whether the court anticipated it, then the burden is on the moving party to establish that the court did not anticipate it, so as to make it a permissible basis for modification.

Where a party's economic circumstances have actually changed since the dissolution court (or a prior modification court) set support, and where it is apparent from the record that the court did *not* anticipate that change in setting support, we have found no precedent for denying modification on the basis that the moving party failed to foresee the change in the earlier proceeding. It should be noted that this case does not involve a stipulated judgment.[6] Nor does it involve a situation where a party failed to disclose known facts or where a party was found to have engaged in gamesmanship.

That alone would likely lead us to affirm in this case. The dissolution court clearly did not anticipate father losing his TMG income when it set support. To the contrary, in setting support, the dissolution court expressly anticipated father receiving $6,400 monthly from TMG. Moreover, the only evidence is that father, mother, mother's brother, and a valuation expert all considered TMG a viable business in August 2018. As in *Sugar*, 212 Or App at 471-72, the dissolution court did not anticipate father's total loss of TMG income, nor could it have anticipated it on the record that it had.

We need not definitely resolve, however, whether modification might ever be properly denied based on the moving party's failure in the prior support proceeding to *discover* and present evidence of a possible future event. Given

---

[6] In the context of a stipulated judgment, what the *parties* anticipated, as distinct from what the court anticipated, has greater significance. *See Baertlein and Stocks*, 303 Or App 51, 60-61, 464 P3d 433 (2020) (explaining that the terms of a stipulated dissolution judgment, including support provisions, are enforced and construed like contract terms, with the goal being "to determine the parties' intentions"). In cases involving stipulated judgments, we may presume that the parties were fully aware of their own financial circumstances when agreeing to terms. *See, e.g.*, *Chirrick*, 144 Or App at 382-84; *Hadley and Hadley*, 77 Or App 295, 299, 713 P2d 39 (1986). Parties also have more flexibility in planning for future events than trial courts do.

the well-established rule against speculation, it is readily apparent that, if such a consequence were to be imposed, it could only be imposed in circumstances in which the future change was so certain and nonspeculative at the time of the prior proceeding that, had it been raised, it would have had to be taken into account in setting support. There would be no reason to penalize a party for not discovering and raising a potential future change in income or expenses earlier—by denying modification—if raising it earlier would have had no effect on the support award, because it remained speculative at that time. The entire point of modification procedures is to provide a mechanism to address future economic changes, so that courts need not engage in improper speculation about uncertain future events when setting support. *Neil*, 112 Or at 65; *Nussmeier*, 27 Or App at 175.

Here, there is no evidence that TMG was in such dire straits as of August 3, 2018, that its demise was certain. It is important to remember that courts expect some fluctuation in income from businesses like TMG. Decreased business income typically must continue for some time before it will be treated as a permanent change in income. *See Thomsen and Thomsen*, 167 Or App 218, 223, 2 P3d 432 (2000); *Boyd*, 152 Or App at 788-89; *Harden*, 67 Or App at 690-91. If the dissolution court had had the same information as the modification court did regarding TMG's financial condition on August 3, 2018, it would have been improperly speculative at that point for the dissolution court to find that TMG was going to fail and produce no income for father and then set support on that basis.

Courts are supposed to set support based on the existing resources and needs of the parties, while leaving speculative future economic changes to be addressed through modification. The only notable feature of this case is that the time from the dissolution trial until the filing of the motion to modify was unusually short (four months), albeit longer than it was in *Sills*, 63 Or App at 160 (motion filed six weeks after trial, based on job loss that occurred two weeks after trial). Although it is rare for a party's economic circumstances to change substantially in the months immediately after a dissolution trial, we must necessarily

decide the case before us on its own record, as we did in *Sills*, and as we always do.

## IV.  CONCLUSION

In sum, the trial court erred in denying modification based on father having failed to prove a substantial change in economic circumstances under ORS 107.135(3)(a). Father established a substantial change in his economic circumstances since the dissolution trial, specifically the closure of the business of which he became a two-thirds owner at dissolution and a resulting large decrease in his monthly income. On remand, the trial court must now address the issues that it did not reach. It must decide whether the termination or modification of spousal support is "just and equitable." *See Davis and Lallement*, 287 Or App 323, 328, 401 P3d 1230 (2017) ("[I]f the court concludes that there has been a substantial, unanticipated change in economic circumstances, then the trial court must determine what amount of support is just and equitable under the totality of the circumstances." (Internal quotation marks omitted.)). And it must decide whether and to what extent child support should be modified. *See* ORS 25.280; *Nieth*, 199 Or App at 334 (describing procedure for deciding modification of child support).[7]

Reversed and remanded as to denial of father's motion to terminate spousal support and modify child support; otherwise affirmed.

---

[7] Although father's arguments pertain mostly to his own economic circumstances, he also asserts on appeal that mother's monthly income or earning capacity has increased since the dissolution trial. The trial court did not comment on mother's economic circumstances, and the parties disagree as to whether the issue was preserved. At this point, under the circumstances, that issue is best addressed by the trial court on remand, as appropriate, in the context of its "just and equitable" determination.